HONORABLE THOMAS S. ZILLY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

3Pak LLC, D/B/A OMA BAP,

               Plaintiff,

     v.

CITY OF SEATTLE,

               Defendant.

NO.  2:23-cv-00540-TSZ

DEFENDANT CITY OF SEATTLE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**NOTE ON MOTION CALENDAR: JUNE 9, 2023**

**ORAL ARGUMENT REQUESTED**

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT
(Case No. 2:23-cv-00540)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

I.      INTRODUCTION ...................................................................................................... 1

II.     RELEVANT FACTS ................................................................................................. 1

III.    ARGUMENT ............................................................................................................. 3

        A.    Legal Standard. ............................................................................................... 3

        B.    Plaintiff's Substantive Due Process Claim Fails as a Matter of Law. ....................... 4

              1.    Plaintiff Fails to Plausibly Allege an Actual, Particularized Danger. ............. 5

                    a.    Plaintiff's State-Created Danger Claim based on the CHOP Period
                          (June 8-July 1, 2020) Mirrors the Plaintiffs' Identical Claim in
                          *Hunters Capital* and Should be Dismissed. ...................................... 5

                    b.    Plaintiff's Post-CHOP Substantive Due Process Claim Should Be
                          Dismissed Because Plaintiff Does Not Allege any Affirmative Acts
                          by the City that Exposed Plaintiff to a Particularized Danger it
                          Would not Otherwise Have Faced. ...................................................... 6

              2.    Plaintiff Fails to Plausibly Allege Deliberate Indifference of the City. .......... 8

                    a.    Plaintiff Cannot State A Claim that the City Acted With Deliberate
                          Indifference During CHOP. ............................................................... 9

                    b.    Plaintiff Cannot Plausibly Allege that the City's Post-CHOP
                          Affirmative Actions Shock the Conscience. ....................................... 9

        C.    Plaintiff's Takings Claim Fails as a Matter of Law. ................................................ 10

              1.    Plaintiff's *Per Se* Takings Claim Fails Because Plaintiff Has Not Alleged
                    any Interference with its Property Rights By The City Directly or Any Facts
                    From Which The Court Could Infer that the City Required Plaintiff to Allow
                    Third Parties onto its Property. .............................................................. 10

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - i
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

2.      Plaintiff's Lack of Access Claim Fails Because any Access Disruptions were Intermittent and Temporary. ....................................................................... 11

     a.     Washington Does not Recognize Takings Claims Based on Temporary or Intermittent Access Disruptions................................ 11

     b.     Alternatively, the Court Should Certify the Diminished Access Question to the Washington State Supreme Court. ......................... 14

D.     Plaintiff's Nuisance Claim Fails as a Matter of Law. ............................................... 15

E.     Plaintiff's Negligence Claim Fails as a Matter of Law Under the Public Duty Doctrine................................................................................................................. 17

IV.     CONCLUSION ....................................................................................................... 19

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - ii
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adamson v. Port of Bellingham,*
 899 F.3d 1047 (9th Cir. 2018) ......................................................................... 14

*Alves v. U.S.,*
 133 F.3d 1454 (Fed. Cir. 1998) ...................................................................... 10

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ............................................................................................ 3

*Atherton Condo. Apartment-Owners Ass'n Bd. of Dir. v. Blume Dev. Co.,*
 799 P.2d 250 (Wash. 1990) ............................................................................. 16

*Bailey v. Town of Forks,*
 737 P.2d 1257 (Wash. 1987) ............................................................................ 17

*Balistreri v. Pacifica Police Dep't,*
 901 F.2d 696 (9th Cir. 1988) ............................................................................. 3

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys. Inc.,*
 637 F.3d 1047 (9th Cir. 2011) ........................................................................... 3

*Cedar Point Nursery v. Hassid,*
 141 S. Ct. 2063 (2021) ................................................................................ 10, 11

*Collins v. City of Harker Heights,*
 503 U.S. 115 (1992) ......................................................................................... 4, 8

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,*
 489 U.S. 189 (1989) ......................................................................................... 4, 7

*Ehrhart v. King Cnty.,*
 460 P.3d 612 (Wash. 2020) ............................................................................. 18

*Fayer v. Vaught,*
 649 F.3d 1061 (9th Cir. 2011) ........................................................................... 3

*F.C.C. v. Florida Power Corp.,*
 480 U.S. 245 (1987) .......................................................................................... 10

*Fishburn v. Pierce Cnty. Planning & Land Servs. Dep't,*
 250 P.3d 146 (Wash. Ct. App. 2011) .............................................................. 18

*Folsom v. Burger King,*
 958 P.2d 301 (Wash. 1998) ............................................................................. 17

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - iii
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*Haberle v. Troxell,*
    885 F.3d 170 (3d Cir. 2018)................................................................................... 8

*Hernandez v. City of San Jose,*
    897 F.3d 1125 (9th Cir. 2018) ............................................................................ 10

*Hoskins v. City of Kirkland,*
    503 P.2d 1117 (Wash. Ct. App. 1972)................................................................ 13

*Hostetler v. Ward,*
    704 P.2d 1193 (Wash. 1985)............................................................................... 16

*Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.,*
    542 F.3d 529 (6th Cir. 2008) ................................................................................ 8

*Hunters Capital v. City of Seattle,*
    No. 20-cv-00983, 2023 WL 184209 (W.D. Wash)..................................... *passim*

*Hurley v. Port Blakely Tree Farms L.P.,*
    332 P.3d 469 (Wash. Ct. App. 2014)............................................................. 15, 16

*Johnson v. City of Seattle,*
    474 F.3d 634 (9th Cir. 2007) ................................................................................ 9

*Keiffer v. King Cnty.,*
    572 P.2d 408 (Wash. 1977)............................................................................ 11, 12

*Kennedy v. City of Ridgefield,*
    439 F.3d 1055 (9th Cir. 2006) .............................................................................. 4

*Leyman Bros. v. Schein,*
    416 U.S. 386 (1974)............................................................................................ 14

*Lombardi v. Whitman,*
    485 F.3d 73 (2d Cir. 2007).................................................................................... 8

*Loretto v. Teleprompter Manhattan CATV Corp.,*
    458 U.S. 419 (1982)...................................................................................... 10, 11

*Lund v. Idaho & W.N.R.R.,*
    97 P. 665 (Wash. 1908)....................................................................................... 12

*L.W. v. Grubbs,*
    974 F.2d 119 (9th Cir. 1992) ................................................................................ 7

*Martinez v. City of Clovis,*
    943 F.3d 1260 (9th Cir. 2019) ................................................................. 4, 5, 7, 8

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - iv
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*Matican v. City of New York*,
    524 F.3d 151 (2d Cir. 2008) ............................................................................. 8

*McMoran v. State*,
    345 P.2d 598 (Wash. 1959) ............................................................................ 12

*Munich v. Skagit Emergency Commc'n Ctr.*,
    288 P.3d 328 (Wash. 2012) ............................................................................ 17

*Osborn v. Mason Cnty.*
    134 P.3d 197 (Wash. 2006) ............................................................................ 17

*Pande Cameron & Co. of Seattle, Inc. v. Cent. Puget Sound Regl. Transit Auth.*,
    610 F. Supp. 2d 1288 (W.D. Wash. 2009) ......................................... 11, 12, 14

*Patel v. Kent Sch. Dist.*,
    648 F.3d 965 (9th Cir. 2011)) ........................................................................... 8

*Pepper v. J.J. Welcome Const. Co.*,
    871 P.2d 601 (Wash. Ct. App. 1994) ............................................................. 16

*Pierce v. Yakima Cnty.*,
    251 P.3d 270 (Wash. App. Ct. 2011) ............................................................. 18

*Quicksilver Audio, Ltd. v. City of Kennewick*,
    2008 WL 5170446 (E.D. Wash. Dec. 9, 2008) ......................................... 12, 14

*Railroad 1900, LLC v. City of Sacramento*,
    604 F. Supp. 3d 968 (E.D. Cal. 2022) ........................................................... 4, 9

*Ravenscroft v. Wash. Water Power Co.*,
    969 P.2d 75 (Wash. 1998) .............................................................................. 18

*Sinclair v. City of Seattle*,
    61 F.4th 674 (9th Cir. 2023) ...................................................................... 5, 6, 9

*State ex rel. Moline v. Driscoll*,
    53 P.2d 622 (Wash. 1936) .............................................................................. 12

*Stern v. City of Spokane*,
    131 P. 476 (Wash. 1913) ........................................................................... 11, 14

*Tamas v. Dept. of Soc. & Health Servs.*,
    630 F.3d 833 (9th Cir. 2010) ............................................................................ 8

*Vandevere v. Lloyd*,
    644 F.3d 957 (9th Cir. 2011) .......................................................................... 11

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*Walker v. State,*
    295 P.2d 328 (Wash. 1956) ................................................................................... 13

*Washburn v. City of Federal Way,*
    310 P.3d 1275 (Wash. 2013) ................................................................................. 17

*White v. City of Minneapolis,*
    No. 21-cv-0371, 2021 WL 5964554 (D. Min. Dec. 16, 2021) ................................ 5

*Yee v. City of Escondido,*
    503 U.S. 519 (1992) ............................................................................................... 10

*Zineron v. Burch,*
    494 U.S. 113 (1990) ................................................................................................. 4

**Statutes and Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 3

RCW 2.60.020 .................................................................................................................. 14

RCW 35.22.280(7) ........................................................................................................... 13

**Other Authorities**

Seattle Fire Code Section 101.3 ....................................................................................... 18

SMC 11.16.125(1) ........................................................................................................... 13

SMC 15.02.025 ................................................................................................................ 19

SMC 15.02.025(D) ........................................................................................................... 19

SMC 15.90.004(E) ........................................................................................................... 19

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - vi
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

## I.     INTRODUCTION

Plaintiff 3Pak LLC d/b/a Oma Bap, which is a restaurant located across the street from Cal Anderson Park in Capitol Hill, has brought suit against Defendant City of Seattle alleging several of the same claims arising from the Capitol Hill Occupied Protest ("CHOP") that this Court heard in *Hunters Capital v. City of Seattle*, No. 20-cv-00983 (W.D. Wash.).  This Court dismissed the *Hunters Capital* plaintiffs' substantive due process, *per se* taking, and negligence claims on summary judgment and should similarly dismiss Plaintiff's substantively identical claims here.  If Plaintiff's factual allegations are assumed to be true, Plaintiff has stated no plausible claim on which relief can be granted as to those claims.

Plaintiff's nuisance and temporary "diminished access" taking claims also should be dismissed.  In contrast to the *Hunters Capital* plaintiffs' "narrowly-tailored" negligence claims, here Plaintiff's negligence claim is based in part on the same allegedly unreasonable "affirmative acts" on which its nuisance claim is based.  Because Plaintiff's nuisance claim is fully subsumed by its negligence claim, it should be dismissed.  Plaintiff's complaint also alleges only that access to Plaintiff's property was intermittently and temporarily impaired, dooming its diminished access claim:  in Washington, there is no property right to be free of temporary government interference.

## II.     RELEVANT FACTS

Plaintiff operates a fast-casual Korean restaurant at the corner of 11th and Olive, across the street from Cal Anderson Park in Capitol Hill.  Dkt. 1 at ¶14.  Plaintiff makes claims for (a) substantive due process violations, (b) takings, (c) nuisance, and (d) negligence, arising out of both the City's response to CHOP and its not clearing (until December 2020) an encampment that arose in Cal Anderson Park after CHOP had been cleared.  Dkt. 1 at ¶¶90-118.

Plaintiff focuses on the activities of CHOP participants, claiming that they caused significant damage throughout the Pike/Pine neighborhood, including vandalizing property, operating make-shift food stores, running a medical tent, lighting fireworks, and engaging in

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 1
(Case No. 2:23-cv-00540)

1    similar actions.  Dkt. 1 at ¶¶22-39.  Plaintiff also complains that on "multiple occasions" traffic

2    control devices the City placed around Cal Anderson Park and the East Precinct to regulate traffic

3    and separate vehicles from pedestrians were used by protestors in ways that diminished access to

4    its business.  Dkt. 1 at ¶7.  But, as the complaint makes clear, Plaintiff's restaurant is outside the

5    area around the East Precinct building that was initially blocked by protestors. Dkt. 1 at ¶¶3

6    (precinct located at 12th and Pine); 20 ("blocked-off area" included streets "within one block from

7    the precinct"); 62 (Plaintiff located at 11th and Olive).  Further, Plaintiff concedes that by June 16,

8    2020, the City was ensuring at minimum one-way access to Plaintiff's restaurant via both 11th and

9    12th Avenues.  Dkt. 1 at ¶82.

10           Plaintiff alleges that the City's provision of materials and services in the area around Cal

11   Anderson placed Plaintiff in greater danger than would have resulted from doing nothing to strive

12   to maintain peace in the CHOP.  Dkt. 1 at ¶92.  The materials and services on which this claim

13   focuses include providing (a) port-o-potties and wash stations, (b) lights, (c) concrete traffic

14   control devices; (d) medical equipment, (e) a hose bibb, (f) speed bumps, and (g) garbage service.

15   Dkt. 1 at ¶84.  Plaintiff also claims that City support for the Black Lives Matter movement and the

16   City's efforts to find a peaceable resolution to the CHOP amounted to endorsing criminal and other

17   activity.  Dkt. 1 at ¶10.

18           Plaintiff also makes complaints against the City for post-CHOP events centering on the

19   City's alleged failure to timely remove an encampment that arose in Cal Anderson Park after the

20   City had cleared CHOP.  *Id.,* at ¶12.  These post-CHOP claims include alleged harm from the

21   City's collection of garbage that had been set out for collection by those in the encampment and

22   from the decision of the Seattle Police Department to erect a temporary wall around the East

23   Precinct Building – which is two blocks away from Plaintiff's restaurant – in order to protect the

24   building and the officers working inside.  *Id.*, at ¶84(h), 89(c).

25           The direct harms Plaintiff alleges, such as scratched and broken windows, overturned

26

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 2
(Case No. 2:23-cv-00540)

1   furniture and stolen food orders, arose from the actions of third-parties.  Dkt. 1 at ¶¶63, 67-72.

2   Plaintiff also advances claims based on lost revenue, lack of access, feeling unsafe, property

3   damage, and an inability to receive deliveries.  *Id*.  Plaintiff seeks to connect these events to the

4   City by asserting that the City "effectively authorized" these events by allowing CHOP to exist for

5   three weeks – *i.e.*, by not clearing out the encampment quickly enough.  Dkt. 1 at ¶87.

### III.     ARGUMENT

**A.     Legal Standard.**

8       Dismissal under Rule  requires a court to determine "whether the complaint's factual

9   allegations, together with all reasonable inferences, state a plausible claim for relief."  *Cafasso,*

10  *U.S. ex rel. v. Gen. Dynamics C4 Sys. Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011) (citing *Ashcroft v.*

11  *Iqbal*, 556 U.S. 662, 677-78 (2009).  "A claim has facial plausibility when the plaintiff pleads

12  factual content that allows the court to draw the reasonable inference that the defendant is liable for

13  the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  When determining the

14  sufficiency of a claim, a court must "accept factual allegations in the complaint as true and

15  construe the pleadings in the light most favorable to the non-moving party."  *Fayer v. Vaught*, 649

16  F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted).  The court,

17  however, need "not assume the truth of legal conclusions merely because they are cast in the form

18  of factual allegations."  *Id.*  "[C]onclusory allegations of law and unwarranted inferences are

19  insufficient to defeat a motion to dismiss."  *Id.*; *see also Iqbal*, 556 U.S. at 678 ("A pleading that

20  offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not

21  do.") (Citations and internal quotation marks omitted.)

22      Under Rule 12(b)(6), a complaint may be dismissed as a matter of law for either lack of a

23  cognizable legal theory or lack of sufficient alleged facts despite a cognizable theory.  *Balistreri v.*

24  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  Plaintiff's complaint fails both tests.

25

26

**B.      Plaintiff's Substantive Due Process Claim Fails as a Matter of Law.**

Substantive due process prohibits "certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zineron v. Burch*, 494 U.S. 113, 125 (1990).  Critically, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).  Rather, the Due Process Clause "is a limitation on state action and is not a 'guarantee of certain minimal levels of safety and security.'"  *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019).  The Government's not acting to "prevent acts of a private party is insufficient to establish liability.'" *Id.*

Here, Plaintiff's complaint purports to advance a single exception to this general rule – the "state-created danger" exception.  Dkt. 1, ¶91.  Under this exception, a plaintiff must show that "the state action 'affirmatively place[d] the plaintiff in a position of danger,' that is, where the state action creates or exposes an individual to a danger which he or she would not have otherwise faced."  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (quoting *DeShaney*, 489 U.S. at 197).[1]  To invoke the exception, plaintiff must allege that "(i) the City's affirmative actions created or exposed them to an actual, particularized danger that they would not otherwise have faced, (ii) they suffered a foreseeable injury, and (iii) the City was deliberately indifferent to the known danger."  *Hunters Capital*, 2023 WL 184209 at *6.  Here, Plaintiff has failed to allege specific facts from which the Court could reasonably infer a violation of either the first or the third

---

[1] As an initial matter, Plaintiff cannot state a claim under the state-created danger exception because it is an LLC, not an individual.  Dkt. 1 at ¶ 14; 70-71.  In *Railroad 1900, LLC v. City of Sacramento*, the court recognized, "[e]very Ninth Circuit decision of which this court is aware in which the court recognized a claim for state-created danger involved risks of bodily harm to individuals."  604 F. Supp. 3d 968, 976 (E.D. Cal. 2022).  "It is doubtful that the Supreme Court in [*DeShaney*] – the progenitor of the state-created danger doctrine [--] intended to allow § 1983 liability based on economic harms to non-individual plaintiffs, given that that case involved the infliction of bodily harm to a child."  *Id.*  Moreover, the Supreme Court "ha[s] always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended."  *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).  For this reason alone, Plaintiff's claim should be dismissed.

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 4
(Case No. 2:23-cv-00540)

1  elements.

2      1.      **Plaintiff Fails to Plausibly Allege an Actual, Particularized Danger.**

3          To satisfy the first element under the state-created danger exception, Plaintiff must allege

4  facts that show that the City "create[d] or expose[d]" Plaintiff "to an actual, particularized danger

5  that [it] otherwise would not have faced." *Martinez*, 943 F.3d at 1271. "A danger is

6  'particularized' if it is directed at a specific victim." *Sinclair v. City of Seattle*, 61 F.4th 674, 682

7  (9th Cir. 2023).

8          a.      **Plaintiff's State-Created Danger Claim based on the CHOP Period**
                   **(June 8-July 1, 2020) Mirrors the Plaintiffs' Identical Claim in *Hunters***
9                  ***Capital* and Should be Dismissed.**

10         This Court has already recognized that the types of dangers presented by CHOP were not

11 unique to or directed at any specific person. Instead, "the City took affirmative actions with

12 respect to a dynamic situation occurring in Seattle's Capitol Hill neighborhood, *i.e,* a situation

13 affecting the general public." *Hunters Capital*, 2023 WL 184209, *7. Plaintiff's complaint alleges

14 no facts that would justify a deviation from that ruling in this case. Plaintiff does not allege any

15 dangerous action directed at Plaintiff specifically vs. the neighborhood generally.

16         As this Court has recognized, *White v. City of Minneapolis*, another case arising from the

17 Summer 2020 protests, is on point and instructive. No. 21-cv-0371, 2021 WL 5964554 (D. Min.

18 Dec. 16, 2021). There, the district court dismissed the property owners' claims at the pleading

19 stage, explaining that the plaintiffs had failed to allege facts showing that they were members of a

20 "limited, precisely definable group." *Id.* at *6; *see also Hunters Capital*, 2023 WL 184209 at *7.

21 As the *White* court explained, the phrase "residents and business owners in the Third Precinct" was

22 "fairly understood to be the general public" and "the general public is not a limited, precisely

23 definable group." 2021 WL 5964554 at *6.

24         The Ninth Circuit's recent opinion in another case arising from CHOP, *Sinclair*, is in

25 accord. 61 F.4th at 682. There, the mother of an individual killed while in the vicinity of Cal

26

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 5
(Case No. 2:23-cv-00540)

Anderson Park during CHOP brought a substantive due process claim against the City. The district court dismissed her complaint, and the Ninth Circuit affirmed, holding:

> A "particularized" danger, naturally, contrasts with a general one. But any danger the City created or contributed to by enabling the CHOP zone affected all CHOP visitors equally; the danger was not specifically directed at Sinclair or Anderson. That is, the dangers that Anderson faced as a result of the City ignoring the lawlessness and crime occurring in CHOP were the same as anyone else; the City did not create a danger that posed a specific risk to Sinclair.

*Id*.

Here, Plaintiff alleges the same generalized dangers that the Court has already found insufficient, not dangers directed at Plaintiff. For example, Plaintiff concedes that:

> …[T]his lawsuit is about Plaintiff's constitutional and other legal rights of [sic.] which were overrun by the City of Seattle's decision to abandon and close off an entire city neighborhood, leaving it unchecked by the police, unserved by fire and emergency health services, and inaccessible to the public at large, and then materially support and encourage a hostile occupation of that neighborhood. **The City's decision subjected businesses, employees, and residents of that neighborhood to extensive property damage, public safety dangers, and an inability to use and access their properties.**

Dkt. 1 at ¶2 (Emphasis supplied). Plaintiff's claims also acknowledge that the harm it suffered was not unique to it: "The City's conduct enabled the widespread destruction and vandalism of private property. Graffiti was pervasive throughout the area—on barriers, streets, sidewalks, and nearly every private building within CHOP." Dkt. 1 at ¶ 9. These allegations fell far short of the particularized harm required to support the plaintiffs' claims in *Hunters Capital*, and cannot support a claim by Plaintiff here. Plaintiff's substantive due process claim based on acts during CHOP should be dismissed.

           **b.**      **Plaintiff's Post-CHOP Substantive Due Process Claim Should Be Dismissed Because Plaintiff Does Not Allege any Affirmative Acts by the City that Exposed Plaintiff to a Particularized Danger it Would not Otherwise Have Faced.**

Plaintiff's substantive due process claim based on the City's alleged constitutional violations after CHOP was cleared on July 1 also fails to allege facts from which the Court could

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 6
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

infer that (1) any danger was specifically directed at Plaintiff, or that (2) any affirmative acts by the City "left [Plaintiff] in a situation that was more dangerous than the one in which [the City] found it." *Hunters Capital*, 2023 WL 184209 at *6 (citing *Martinez*, 943 F.3d at 1271).

Plaintiff acknowledges that "the City officially ended CHOP on July 1, 2020, by clearing CHOP of barricades and encampments" and that "the dumpsters and at least some of the portable toilets were removed in July 2020." Dkt. 1 at ¶89, 65. Thereafter, another "smaller encampment" developed at Cal Anderson Park, which the City cleared in December 2020. Dkt. 1 at ¶37.

Plaintiff's primary post-CHOP allegations are that the City chose "to not clear out the reoccupation of that park, directly across the street from Plaintiff, until December 2020," that the City failed "to properly address the violence, crime, vandalism, and overall danger created by that reoccupation prior to December 16, 2020," and that "Police often did not respond to or attempt to stop crime associated with [post-CHOP] protests" in the area. Dkt. 1 at ¶¶89(a)-(b); 95.

None of these allegations supports a substantive due process claim because all advance only non-action by the City. Only "affirmative actions" are actionable under the state-created danger exception. *Martinez*, 943 F.3d at 1271. "As a general rule, members of the public have no constitutional right to sue [public] employees who fail to protect them against harm inflicted by third parties." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992) (citing *DeShaney*, 489 U.S. at 197). "The general rule is that a state is not liable for its omission and the Due Process Clause does not impose a duty on the state to protect individuals from third parties." *Martinez*, 943 F.3d at 1271.

The only post-CHOP *affirmative* acts Plaintiff alleges are (1) that the City collected garbage that had been left near the street separating Plaintiff's restaurant from Cal Anderson Park (Dkt. 1 at ¶65), and (2) that the City erected a concrete wall around the SPD East Precinct building (Dkt. 1 at ¶89(c)). But Plaintiff does not, and cannot, allege facts that support an inference that either a) the City's decision to pick up garbage or b) its decision to install a temporary wall to

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 7
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

protect the East Precinct building (which is two blocks away from Plaintiff's restaurant) and the officers working therein "created or exposed [Plaintiff] to an actual, particularized danger that [it] would not otherwise have faced" had the City decided to just let trash pile up in the street or not secure the precinct.  Plaintiff's post-CHOP substantive due process claim should be dismissed.

### 2.    Plaintiff Fails to Plausibly Allege Deliberate Indifference of the City.

Plaintiff also cannot allege facts necessary to satisfy the third element of the state-created danger exception.  Only conduct that "shocks the conscience" is cognizable as a due process violation. *Tamas v. Dept of Soc. & Health Servs.*, 630 F.3d 833, 844 (9th Cir. 2010).  Deliberate indifference is "a stringent standard of fault" that is "even higher than gross negligence." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (citation omitted).  Specifically, in order to state a claim, a plaintiff must prove that the "state actor" not only "recognize[d] an unreasonable risk" but "actually intend[ed] to expose the plaintiff to such risks without regard to the consequences to the plaintiff"; merely alleging that the state actor missed an obvious risk or exercised poor judgment is insufficient. *Martinez*, 943 F.3d at 1274 (citations omitted).  Instead, "the state actor must have known that something was going to happen, but 'ignored the risk and exposed the [plaintiff] to it anyway.'" *Id.*

This level of culpability is absent where officials are compelled to balance competing interests, even if their efforts to do so proved to be misguided.  As the Supreme Court recognized in *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992), a state actor does not act with deliberate indifference where a decision is "based on a rational decision making process that takes account of competing social, political, and economic forces." *Id.*[2]

---

[2] *See also, e.g., Matican v. City of New York*, 524 F.3d 151, 159 (2d Cir 2008); *Lombardi v. Whitman*, 485 F.3d 73, 82-85 (2d Cir. 2007); *Haberle v. Troxell*, 885 F.3d 170, 177-78 (3d Cir. 2018); *Hunt v. Sycamore Comt. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 535-36, 540 (6th Cir. 2008).

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 8
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

a.     **Plaintiff Cannot State A Claim that the City Acted With Deliberate Indifference During CHOP.**

Here, Plaintiff's CHOP-related allegations mirror those that this Court has already held cannot support a claim for deliberate indifference.  *Hunters Capital*, 2023 WL 184209 at *8.  Just as in *Hunters Capital*, Plaintiff alleges that the City provided port-a-potties, lights, medical equipment, traffic control devices, and garbage services; and that the City downplayed the violence of CHOP, which drew more people to come and stay in the area.  But the Court has already ruled that the City's response to CHOP did not shock the conscience and did not amount to deliberate indifference.  Unlike the typical state-created danger case, "the City made a conscious effort to balance multiple competing objectives for the duration of CHOP, such as protesters' First Amendment rights, public safety in the area, and sanitation services to combat the spread of COVID and other diseases."  *Hunters Capital*, 2023 WL 184209, at *8.  Plaintiff has alleged nothing meriting a different result here.[3]

b.     **Plaintiff Cannot Plausibly Allege that the City's Post-CHOP Affirmative Actions Shock the Conscience.**

Plaintiff alleges that the City "acted with deliberate indifference" when it "chose to not clear out the reoccupation of that park, directly across the street from Plaintiff, until December 2020."  Dkt. 1 at ¶95.  But waiting to clear the park until December 2020 is not an affirmative act and cannot support a substantive due process claim.  *See Johnson v. City of Seattle*, 474 F.3d 634, 637 (9th Cir. 2007); *Railroad 1900*, 604 F. Supp. 3d at 975-77.

The City's provision of garbage service and securing the SPD East Precinct building two blocks away also cannot support Plaintiff's claim.  To meet the deliberate indifference standard, Plaintiff had to allege facts supporting an inference that the City "disregarded a known or obvious

---

[3] In *Sinclair*, the Ninth Circuit held that the plaintiff there had alleged sufficient facts to satisfy the "deliberate indifference" element, but did not address the City's need to balance the competing interests, which this Court addressed in *Hunters Capital*.  61 F.4th at 681.  Nevertheless, the Ninth Circuit affirmed dismissal of the plaintiff's claim in *Sinclair* because the plaintiff there could not allege facts sufficient to satisfy the first, "particularized danger" element of the state-created danger exception.  *Id.* at 681-83.

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 9
(Case No. 2:23-cv-00540)

consequence of [its] action." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1135 (9th Cir. 2018). Plaintiff has alleged no such specific facts: *i.e.*, facts supporting an inference that the City knew that taking either action would expose Plaintiff to harms like broken windows, overturned tables, and delivery-driver impersonators stealing food.  Dkt. 1 at ¶¶68(e)-72.  Plaintiff's post-CHOP substantive due process claim should be dismissed for this reason as well.

**C.      Plaintiff's Takings Claim Fails as a Matter of Law.**

   **1.      Plaintiff's *Per Se* Takings Claim Fails Because Plaintiff Has Not Alleged any Interference with its Property Rights By The City Directly or Any Facts From Which The Court Could Infer that the City Required Plaintiff to Allow Third Parties onto its Property.**

   Plaintiff does not allege that the City itself invaded or interfered with Plaintiff's property. Instead, Plaintiff argues that the City committed a *per se* taking by encouraging third parties to invade Plaintiff's location, "creating a government-authorized invasion of Plaintiff's leasehold." Dkt. 1 at ¶¶ 99, 101.

   As this Court recognized in dismissing identical claims brought by the plaintiffs in *Hunters Capital*, "the government … cannot be held liable for a taking 'when whatever acts complained of' are the independent actions of private parties." *Hunters Capital*, 2023 WL 184209 at *9 (citing *Alves v. U.S.*, 133 F.3d 1454, 1458 (Fed. Cir. 1998)).  Where the government has not **required** the property owner to allow a third party to occupy its property no taking has occurred.  *See Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021) (California regulation granting union organizers the right to enter private farmland); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) (statute authorizing third party to install cable equipment on private apartment buildings). "This element of required acquiescence is at the heart of the concept of occupation." *F.C.C. v. Florida Power Corp.*, 480 U.S. 245, 252 (1987).  "The government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land." *Yee v. City of Escondido*, 503 U.S. 519, 527 (1992).

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700    FAX (206) 623-8717

Plaintiff has alleged no such facts.  Nor does Plaintiff identify any statute, ordinance, or other source of law that granted third parties a "formal entitlement" to enter onto Plaintiff's property, as was the case in *Cedar Point* and *Loretto*.  *Hunters*, 2023 WL 184209, *9. Plaintiff's *per se* taking claim should be dismissed.

> **2.**     **Plaintiff's Lack of Access Claim Fails Because any Access Disruptions were Intermittent and Temporary.**

> > **a.**     **Washington Does not Recognize Takings Claims Based on Temporary or Intermittent Access Disruptions.**

Plaintiff also alleges a taking claim based on temporary diminished access to its property.  In order to establish a taking under federal law, Plaintiff must first establish the existence of a protected property interest under Washington law.  *Vandevere v. Lloyd*, 644 F.3d 957, 963 (9th Cir. 2011).  Because it cannot do so, Plaintiff's diminished access claim should be dismissed.

Washington courts have established a two-step inquiry for determining whether a claim for diminished access exists, only the first of which the Court need reach here.  *See Keiffer v. King Cnty.*, 572 P.2d 408 (Wash. 1977).  The first step "is to determine if the government action in question has actually interfered with the right of access as that property interest has been defined by our law."  *Id.* at 409-10.  This is a question of law.  *Pande Cameron & Co. of Seattle, Inc. v. Cent. Puget Sound Reg'l Transit Auth.*, 610 F. Supp. 2d 1288, 1304 n.2 (W.D. Wash. 2009).  Only where a recognized property interest has been interfered with does the court move to the second step, which measures the "degree of impairment."  *Id.* at 410.

Washington does not recognize a protected property right for "temporary diminished access."  *Pande Cameron*, 610 F. Supp. 2d at 1301 (recognizing that "temporary interferences with a property right are not constitutional takings of property" under Washington law, and collecting cases).  For example, in *Stern v. City of Spokane*, a property owner complained that various structures built in the roadway in front of his business while a state-of-the art bridge was built across the Spokane River were interfering with his use of his property.  131 P. 476, 477 (Wash.

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700    FAX (206) 623-8717

1913).  The Washington Supreme Court held that only actions that "permanently changed a physical condition, either destroyed the use of the street or added an additional servitude," could support a taking claim.  *Id.*  "Temporary obstructions" provide no right to recovery.  *Id.*

Later cases are in accord.  In *Pande Cameron*, which involved blocking streets and sidewalks for approximately nine months during construction of light rail under downtown Seattle, the district court dismissed the plaintiff's temporary diminished access claim because "there is no authority under Washington law for a temporary 'right of access' takings claim."  610 F. Supp. 2d at 1304.[4]  The court in *Quicksilver Audio, Ltd. v. City of Kennewick*, agreed that "under Washington law, a claim for 'interference with access' … is limited to damages arising from a complete, permanent loss of access."  2008 WL 5170446, *2 (E.D. Wash. Dec. 9, 2008) (18-month interference).[5]

The Court's decision in *Hunters Capital* did not specifically address this issue, which is dispositive here based on Plaintiff's allegations.  For example, Plaintiff concedes in its complaint that its access issues were intermittent.  *See* Dkt. 1 at ¶68 (noting that access to its property occurred "on multiple occasions", rather than constantly).  Plaintiff has also acknowledged that the City ensured one-way access was available on 11th and 12th Avenues beginning June 16, and that all of the streets were cleared of barriers by July 1 – *i.e.,* at most, Plaintiff's impaired access lasted three weeks.  Dkt. 1 at ¶89.  Proof of this level of diminished access will not support a temporary taking claim under Washington law.

Washington courts also recognize that actions "taken pursuant to the police power for the purpose of regulating the flow of traffic on the public way itself are generally not compensable."

---

[4] The court in *Pande Cameron* dismissed the plaintiff's claim there without reaching the second *Keiffer* step.  *Pande Cameron*, 610 F. Supp. 2d at 1303 (noting that "in this case the inquiry does not extend beyond the first step which is to be determined by the Court").

[5] In contrast, where lack of access claims have been recognized all involved permanent access impairments.  *E.g., Keiffer*, 572 P.2d at 409 (permanent concrete curb); *McMoran v. State*, 345 P.2d 598 (Wash. 1959) (same); *State ex rel. Moline v. Driscoll*, 53 P.2d 622 (Wash. 1936) (lowered street grade); *Lund v. Idaho & W.N.R.R.*, 97 P. 665 (Wash. 1908) (construction of railroad line blocking access to property).

1   *Keiffer*, 572 P.2d at 408.  More specifically, where "the landowner still retains an alternate mode of

2   egress from or ingress to his land, even if less convenient, generally speaking he is not deemed

3   specially damaged." *Hoskins v. City of Kirkland*, 503 P.2d 1117, 1120 (Wash. Ct. App. 1972).

4          Plaintiff's allegations make clear that, aside from the intermittent blockages described

5   above, it had access to its property.  For example, Plaintiff acknowledges that "initially, the

6   blocked-off area extended to all streets within one block of the precinct" at the corner of 12th and

7   Pine.  Dkt. 1 at ¶20.  Plaintiff's business is located two blocks away, at the corner of 11th and

8   Olive.  Dkt. 1 at ¶14.  Plaintiff also acknowledges that the City secured "one-way access on

9   Eleventh and Twelfth Avenues starting on June 16, 2020."  Dkt. 1 at ¶82.  This type of traffic

10  modification cannot support a claim for diminished access under Washington law.  *Walker v. State*,

11  295 P.2d 328 (Wash. 1956) (installation of permanent centerline barrier eliminating access from

12  one direction did not constitute taking).

13         Plaintiff also cites City correspondence to the effect that the City had provided a "sturdier

14  concrete barrier," but ignores that the barrier was provided at 10th and Pine, two blocks away and

15  on the opposite side of the Park from Plaintiff.  Dkt. 1 at ¶79(d).  Plaintiff does not allege how the

16  provision of this barrier made its business inaccessible.  The same correspondence, which Plaintiff

17  quotes at length, makes clear that all of the City's traffic revisions were intended to:

18  
19          allow traffic to move throughout the Capitol Hill neighborhood, ease access for
            residents of apartment buildings in the surrounding areas, and help local businesses
            manage deliveries and logistics.  Additionally, all plans have been crafted with the
20          goal of allowing access for emergency personnel including fire trucks.

21          ...

22          The City has successfully worked with protesters onsite to reconfigure the CHOP
            to allow for public safety and better access for the local community.  That has
23          involved rerouting traffic, freeing up alley access, opened streets, and replacing
            makeshift barriers with heavy concrete barriers that can be painted.

24  Dkt. 1 at ¶79(d).  All of these actions were within the City's police powers under state and

25  municipal statutes.  RCW 35.22.280(7) (empowering cities to "regulate and control the use[of

26  

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 13
(Case No. 2:23-cv-00540)

streets, alleys, avenues, and sidewalks], and to vacate the same…, and to prescribe the terms and conditions upon which the same may be used, and to regulate the use thereof"); SMC 11.16.125(1) (Authorizing SDOT to "close, or authorize closure, of any street or alley or portion thereof to any or all traffic pursuant to the provisions of [the Seattle Traffic Code]" and to "designate any streets for one way traffic").  None of the City's temporary traffic revisions supports a taking claim. Plaintiff's diminishment of access claim should be dismissed.

> **b.**    **Alternatively, the Court Should Certify the Diminished Access Question to the Washington State Supreme Court.**

Federal law generally favors certification of unsettled issues of state law.  In *Leyman Bros. v. Schein*, 416 U.S. 386 (1974), for instance, the Supreme Court recognized that value of the certification process, because "in the long run, [it saves] time, energy, and resources and helps build a cooperative judicial federalism."  *Id. at 390.*  The Ninth Circuit also has recognized that where federal courts have been asked to apply undeveloped questions of state law, certification is appropriate.  *See Adamson v. Port of Bellingham*, 899 F.3d 1047, 1051 (9th Cir. 2018) (recognizing that an important question of Washington law "is not entirely settled and involves matters of policy best left to resolution by the State of Washington's highest court").

In this Court's summary judgment order in *Hunters Capital*, the Court ruled that the *Hunters* action "[did] not involve the typical exercise of police power to regulate the flow of traffic in the Capitol Hill neighborhood, such as for routine road maintenance or construction."  2023 WL 184209 at *11.  But the *Stern*, *Pande Cameron*, and *Quicksilver Audio* courts were clear that Washington law does not recognize a takings claim based on the government's temporary, non-permanent, interference with access.  None of those cases limited their holdings to cases involving routine road maintenance or construction.  Nor did they recognize any other exception to the general principle under Washington law that a temporary interference with access is not a taking.

As such, pursuant to RCW 2.60.020, to the extent that the Court believes that Plaintiff's allegations present a legally significant distinction from the facts at issue in *Stern*, *Pande Cameron*, and *Quicksilver Audio*, or that an exception under Washington law applies to the type of claim

Plaintiff alleges, the City respectfully requests that the Court certify to the Washington State Supreme Court the question of whether temporary impairments of access that allegedly do not involve the a municipality's use of police power to regulate traffic for the purposes of road maintenance and construction are appropriately analyzed under the same standard that applies to claims based on a government's exercise of police power for those purposes.

Answering this question will involve important policy issues including: (1) whether a government can be responsible under takings law for failing to prevent third parties from impairing access to private property; (2) whether some temporary interference in property access can amount to a taking when it does not involve the use of police power to regulate the flow of traffic in connection with construction and road maintenance; and (3) under what circumstances, if any, a temporary interference with property access could give rise to a takings claim under the Washington Constitution.  Answers could significantly clarify Washington's takings jurisprudence, settling significant legal and policy implications for Washington, its political subdivisions, and property owners.  Specific to this case, answers to these questions would also provide clarity regarding the extent to which municipal involvement in, or authorization of, a third-party's temporary impairment is necessary to give support to a temporary loss of access takings claim.  Certifying this issue to the Washington State Supreme Court to answer is the most efficient way to resolve any ambiguities that the Court may believe this case presents under Washington law.

For these reasons, if the Court is inclined to deny the City's motion to dismiss Plaintiff's diminished access takings claim, the City respectfully requests that the Court certify the issue to the Washington State Supreme Court instead.

**D.      Plaintiff's Nuisance Claim Fails as a Matter of Law.**

A nuisance is "an unreasonable interference with another's use and enjoyment of property." *Hurley v. Port Blakely Tree Farms L.P.*, 332 P.3d 469, 477-78 (Wash. Ct. App. 2014).  While the same acts can "constitute negligence and also give rise to a nuisance[,] … [s]eparate legal theories based upon one set of facts constitute 'one claim' for relief."  *Hurley*, 332 P.3d at 478 (internal

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 15
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

citations omitted).  For this reason, a "negligence claim presented in the garb of nuisance need not be considered apart from the negligence claim." *Hurley*, 332 P.3d at 478 (citing *Atherton Condo. Apartment-Owners Ass'n Bd. of Dir. v. Blume Dev. Co.*, 799 P.2d 250 (Wash. 1990)); *see also Hostetler v. Ward*, 704 P.2d 1193 (Wash. 1985).  Here, Plaintiff's nuisance and negligence claims are based upon the same set of facts – its nuisance claim is simply a re-styled negligence claim and should be dismissed.

Plaintiff likely will argue that the Court rejected this same argument by the City in *Hunters Capital*.  However, in *Hunters Capital*, the plaintiffs narrowed their negligence claim in order to avoid this issue.  2023 WL 184209 at *8 (noting that "Plaintiffs have significantly narrowed their negligence claim, and … argue only that the City owned them a duty under those provisions [for failing to enforce the Fire Code and Street Use Ordinance]).

Here, in sharp contrast, Plaintiff's complaint does not contain any such limit.  Plaintiff alleges that the same "affirmative acts" by the City form the basis of both Plaintiff's negligence and nuisance claims.  To wit, Plaintiff's negligence claim specifically alleges that "[t]he City's affirmative acts as described in this complaint placed Plaintiff at a high and unreasonable risk of foreseeable harm, including but not limited to property damage, lost income and revenue, excessive noise, public safety hazards, vandalism, and decreased or lost access."  Dkt. 1 at ¶106.

Plaintiff's nuisance claim is based precisely on these alleged acts, asserting that "[a]s a direct result of the City's affirmative acts," access was "blocked and/or impeded," which "unreasonably interfered with Plaintiff's business" and that the City's actions during and following CHOP created and maintained a number of "unreasonable conditions, including excessive noise, public safety hazards, vandalism, and poor health and sanitation conditions."  Dkt. 1 at ¶¶114-116.  Because both causes of action are based on the same set of allegedly unreasonable acts by the City, they constitute a single claim for negligence.  *Hurley*,  332 P.3d. at 478 (citing *Pepper v. J.J. Welcome Const. Co.*, 871 P.2d 601 (Wash. Ct. App. 1994)); *see also Atherton*, 799 P.2d at 250.

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 16
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

Plaintiff's nuisance claim should be dismissed.

**E.     Plaintiff's Negligence Claim Fails as a Matter of Law Under the Public Duty Doctrine.**

To state a claim for negligence, a plaintiff must allege "(1) the existence of a duty owed to the complaining party; (2) a breach of the duty; (3) resulting injury; and (4) that the breach was the proximate cause of the injury." *Folsom v. Burger King*, 958 P.2d 301, 308 (Wash. 1998). "A negligence action will not lie if a defendant owed a plaintiff no duty of care, [thus] the primary question is whether a duty of care existed." *Id.* "The existence of a duty is a question of law." *Id.*

Because governmental entities "are tasked with duties that are not legal duties within the meaning of tort law," the public duty doctrine is used as a "focusing tool" for use in determining if an alleged breach entails a duty that is actionable. *Washburn v. City of Federal Way*, 310 P.3d 1275, 1287 (Wash. 2013) (quoting *Munich v. Skagit Emergency Commc'n Ctr.*, 288 P.3d 328, 332 (Wash. 2012). Only duties owed to "a particular individual" are actionable; duties owed "to a nebulous public" are not. *Munich*, 288 P.3d at 332 (quoting *Osborn v. Mason Cnty.*, 134 P.3d 197, 2020 (Wash. 2006).

The public duty doctrine sets out four instances in which a governmental entity may be found to owe a duty of care to a particular member of the public: (1) legislative intent; (ii) failure to enforce; (iii) the rescue doctrine, or (iv) a special relationship. *Munich*, 288 P.3d at 332. While Plaintiff does not specifically articulate in its complaint which exceptions it alleges apply, its complaint appears to allege a duty under legislative intent and failure to enforce exceptions. Dkt. 1 at 109. But Plaintiff's complaint contains no facts from which the Court could reasonably infer a duty exists under either exception.

The "legislative intent" exception applies where the government has failed to comply with a statute or ordinance that mandates government action. *Washburn*, 310 P.3d at 1287; *Bailey v. Town of Forks*, 737 P.2d 1257 (Wash. 1987). The statute must "clearly express[]" the government's intent "to identify and protect a *particular and circumscribed class of persons*," it

will not be implied.  *Ravenscroft v. Wash. Water Power Co.*, 969 P.2d 75, 85 (1998) (emphasis added).

The "failure to enforce" exception applies only if "[1] governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, [2] fail to take corrective action despite a statutory duty to do so, and [3] the plaintiff is within the class the statute is intended to protect."  *Ehrhart v. King Cnty.,* 460 P.3d 612, 619-20 (Wash. 2020).  Under the second element, "the statute must create a mandatory duty to take specific action to correct a violation"; there is no duty enforceable in tort if the statute vests the public official with discretion as to whether or how to perform the corrections needed.  *Fishburn v. Pierce Cnty. Planning & Land Servs. Dep't*, 250 P.3d 146, 156 (Wash. Ct. App. 2011).  The failure to enforce exception is to be "narrowly construed" and applies only where the relevant statute "mandates a specific action to correct a violation." *Pierce v. Yakima Cnty.*, 251 P.3d 270, 274 (Wash. App. Ct. 2011).

Plaintiff's complaint identifies two statutes as the basis for its negligence claim, alleging generically that

> [t]he City … owed [it] a duty pursuant to the Fire Code, which required clearing of the public streets, and the Seattle Municipal Code, which required the City to protect Plaintiff from unreasonable risks of property damage and other harm and dangers by designating an alternate proposal for those who wished to create and participate in CHOP and otherwise occupy Cal Anderson Park during 2020.

Dkt. 1 at ¶109.

Neither statute creates a duty of care owed by the City to Plaintiff.  First, as the Court recognized in dismissing the *Hunters Capital* plaintiffs' negligence claim against the City, neither the Fire Code nor the Seattle Street Use Ordinance (which governs "special events") mandates any action by the City; enforcement or implementation of both statutes is entirely discretionary.  2023 WL 184209, *12-13.  Section 101.3 of the Seattle Fire Code specifically provides that:

> No provision or term used in this code is intended to impose any duty whatsoever upon the city, or any of its officers or employees, for whom the implementation or enforcement of this code is discretionary, not mandatory.

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 18
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

Cramer Dec., Ex. 1, at § 101.3.  The Seattle Street Use Ordinance likewise makes clear its terms are entirely discretionary:

> It is the specific intent of this Street Use Ordinance to place the obligation of complying with its requirements upon the permittee for a permit within its scope; and **no provision of nor term used in this Street Use Ordinance is intended to impose any duty whatsoever upon the City or any of its officers, employees, or agents, for whom the implementation or enforcement of this Street Use Ordinance shall be discretionary and not mandatory.**

SMC 15.02.025(D) (emphasis added); see also SMC 15.90.004(E) ("No provision of or term used in this Code is intended to impose any duty upon the City").

Plaintiff also does not allege facts from which the Court could infer that Plaintiff is within the class of persons to be protected under either statute, which is a necessary element under both exceptions.  Nor could Plaintiff do so, as the Court has already recognized that businesses around Cal Anderson were not within the class intended to be protected by either statute.  *Hunters Capital*, 2023 WL 184209, **12-13 (recognizing that both statutes were for the benefit of the general public, not any particular class of persons); Cramer Dec., Ex. 1 at § 101.3 ("express purpose" of Fire Code is for the benefit of the general public, "not to create or otherwise establish or designate any particular class or group of persons who will or should be especially protected or benefitted by the terms of this code or ordinance"); SMC 15.02.025(c) (express purpose of "Street Use Ordinance" is to benefit the general public, "not to create or otherwise establish or designate any particular class or group of persons who will or should be especially protected or benefited by the terms of this Street Use Ordinance").

Because Plaintiff has not alleged specific facts from which the court could reasonably infer that any exception to the public duty doctrine applies, its negligence claim should be dismissed.

## IV.    CONCLUSION

For all of the reasons set forth herein, the City respectfully requests that the Court grant its motion and dismiss Plaintiff's complaint with prejudice.

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 19
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700    FAX (206) 623-8717

DATED this 18th day of May, 2023.

I certify that this memorandum contains 6574 words, in compliance with the Local Civil Rules.

HARRIGAN LEYH FARMER & THOMSEN LLP

By: _s/ Arthur W. Harrigan, Jr._
By: _s/ Tyler L. Farmer_
By: _s/ Shane P. Cramer_
By: _s/ Erica R. Iverson_

Arthur W. Harrigan, Jr., WSBA #1751
Tyler L. Farmer, WSBA #39912
Shane P. Cramer, WSBA #35099
Erica R. Iverson, WSBA #59627
999 Third Avenue, Suite 4400
Seattle, WA 98104
Tel:  (206) 623-1700
arthurh@harriganleyh.com
tylerf@harriganleyh.com
shanec@harriganleyh.com
ericai@harriganleyh.com

*Attorneys for City of Seattle*

DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 20
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717