HONORABLE THOMAS S. ZILLY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

3Pak LLC, D/B/A OMA BAP,

                Plaintiff,

      v.

CITY OF SEATTLE,

                Defendant.

NO.  2:23-cv-00540-TSZ

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT

[NOTED ON MOTION CALENDAR: JUNE 9, 2023]

**ORAL ARGUMENT REQUESTED**

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT
(Case No. 2:23-cv-00540)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................... 1

    A.   Plaintiff Fails to State a Substantive Due Process Claim. ........................................ 1

        1.   Plaintiff Has Not Alleged that the City Exposed Plaintiff to a Particularized Danger That it Otherwise Would Not Have Faced. ...................................... 1

        2.   Plaintiff Has Not Alleged the City Acted with Deliberate Indifference toward Plaintiff. ........................................................................................ 4

    B.   Plaintiff Fails to State a Viable Takings Claim. ....................................................... 5

        1.   Plaintiff's *Per Se* Takings Claim Should be Dismissed................................ 5

        2.   Plaintiff Cannot State a Claim for Diminished Access; Washington Does Not Recognize a Property Interest Against Temporary or Intermittent Access Disruptions.......................................................................................... 6

        3.   Certification is Appropriate if the Court Believes that a Question Exists as to Whether Washington Would Recognize a Property Interest Against Certain Temporary and Intermittent Access Impairments......................................... 8

    C.   Plaintiff Fails to State a Cognizable Negligence Claim............................................ 9

        1.   Plaintiff Cannot Establish that Any Statute Obligates the City to take Corrective Action that the City Failed to Take. ............................................ 9

        2.   Plaintiff is not Within the Class that Either the Fire Code or the Street Use Ordinance was Intended to Protect. ........................................................... 11

III. CONCLUSION................................................................................................................ 12

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT - i
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

# TABLE OF AUTHORITIES

Page

### Cases

*Arkansas Game & Fish Comm'n v. United States,*
568 U.S. 23 (2012).................................................................................................... 7

*Atherton Condo. Apartment-Owners Ass'n Bd. of Dir. v. Blume Dev. Co.,*
799 P.2d 250 (Wash. 1990)....................................................................................... 9

*Bailey v. Town of Forks,*
737 P.2d 1257 (Wash. 1987)..................................................................................... 11

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,*
637 F.3d 1047 (9th Cir. 2011) .................................................................................. 5

*Cedar Point Nursery v. Hassid,*
141 S. Ct. 2063 (2021).................................................................................... 5, 6, 7, 8

*Chong Yim v. City of Seattle,*
451 P.3d 675 (Wash. 2019)................................................................................. 7, 8

*Donohoe v. State,*
142 P.3d 654 (Wash. Ct. App. 2006)........................................................................ 12

*Ehrhart v. King County,*
460 P.3d 612 (Wash. 2020)............................................................................ 9, 10, 11

*Forest v. State,*
814 P.2d 1181 (Wash. Ct. App. 1991) ..................................................................... 10

*Hernandez v. City of San Jose,*
897 F.3d 1125 (9th Cir. 2018) .................................................................................. 2

*Hunters Capital v. City of Seattle,*
No. 20-cv-00983, 2022 WL 1449387 (W.D. Wash)................................................. 3

*Hunters Capital v. City of Seattle,*
No. 20-cv-00983, 2023 WL 184209 (W.D. Wash)......................................... *passim*

*Keiffer v. King County,*
572 P.2d 408 (Wash. 1977).................................................................................. 6, 7

*Munger v. City of Glasgow Police Dep't,*
227 F.3d 1082 (9th Cir. 2000) .................................................................................. 2

*Pande Cameron & Co. of Seattle, Inc. v. Cent. Puget Sound Regl. Transit Auth.,*
610 F. Supp. 2d 1288 (W.D. Wash. 2009)...................................................... 6, 7. 8

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT - ii
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*Patel v. Kent Sch. Dist.*,
    648 F.3d 965 (9th Cir. 2011)) ................................................................ 5

*Poorbaugh v. United States*,
    27 Fed. Cl. 628 (1993) ........................................................................... 8

*Quicksilver Audio, Ltd. v. City of Kennewick*,
    2008 WL 5170446 (E.D. Wash. Dec. 9, 2008) ................................. 6, 7, 8

*Railroad 1900, LLC v. City of Sacramento*,
    604 F. Supp. 3d 968 (E.D. Cal. 2022) .................................................. 3

*Sinclair v. City of Seattle*,
    61 F.4th 674 (9th Cir. 2023) ........................................................ 1, 2, 3. 4

*Smith v. City of Kelso*,
    48 P.3d 372 (Wash. Ct. App. 2002) .................................................. 9, 10

*Stern v. City of Spokane*,
    131 P. 476 (Wash. 1913) .................................................................... 6, 8

*Taylor v. Kahne Corp.*,
    2006 WL 1587442 (W.D. Wash. June 5, 2006) ...................................... 8

*U.S. Oil Trading, LLC v. State Office of Financial Management*,
    249 P.3d 630 (Wash. Ct. App. 2011) ................................................. 12

*Vandevere v. Lloyd*,
    644 F.3d 957 (9th Cir. 2011) ............................................................... 6

*White v. City of Minneapolis*,
    2021 WL 5964554 (D. Min. Dec. 16, 2021) ....................................... 3, 4

*Wood v. Ostrander*,
    879 F.2d 583 (9th Cir. 1989) ............................................................... 2

*Woods View II, LLC v. Kitsap County*,
    352 P.3d 807 (Wash. Ct. App. 2015) .................................................. 10

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT - iii
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700    FAX (206) 623-8717

**Other Authorities**

Seattle Fire Code Section 101.3 ........................................................................................... 11

Seattle Fire Code Section 104.11.2 ....................................................................................... 9

Seattle Fire Code Section 503.1 ........................................................................................... 9

Seattle Fire Code Section 503.4 ........................................................................................... 9

SMC 15.02.025(C) ................................................................................................................ 11

SMC 15.02.025(D) ............................................................................................................... 10

SMC 15.90.004(A) ............................................................................................................... 10

SMC 15.90.004(C) ............................................................................................................... 11

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT - iv
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

## I.    INTRODUCTION

Plaintiff's response confirms that its claims mirror those brought by the plaintiffs in *Hunters Capital v. City of Seattle*.  Plaintiff asks the Court to take a "fresh look" at its negligence claim, but alleges no facts that would support any result other than dismissal.  Plaintiff next argues that it has stated a cognizable substantive due process claim under the Ninth Circuit's recent decision in *Sinclair v. City of Seattle*, 61 F.4th 674 (9th Cir. 2023), but does not satisfy *Sinclair*'s requirement that to state a claim, Plaintiff must allege facts showing that the City directed some specific, particularized danger toward it, rather than creating a danger to the public generally.

Plaintiff's *per se* physical taking claim should be dismissed because neither Plaintiff's complaint nor its response identify any act by the City formally granting third parties a right to invade Plaintiff's property.  And Plaintiff's diminished access takings claim should be dismissed because Washington does not recognize a property interest against the temporary or intermittent access impairments Plaintiff alleges.

Finally, because Plaintiff has conceded that its negligence claim is limited to the City's alleged failure to enforce the Seattle Fire Code and Street Use Ordinance (Response at 18), the City withdraws its motion to dismiss with respect to Plaintiff's nuisance claim, to the extent that claim is based on the City's alleged affirmative acts rather than the City's alleged failure to act.

## II.    ARGUMENT

**A.    Plaintiff Fails to State a Substantive Due Process Claim.**

**1.    Plaintiff Has Not Alleged that the City Exposed Plaintiff to a Particularized Danger That it Otherwise Would Not Have Faced.**

The Ninth Circuit's analysis in *Sinclair* shows that the Court correctly dismissed the *Hunters Capital* plaintiffs' substantive due process claims, and that it should do the same with Plaintiff's claim here.  To prevail on a state-created danger claim, a plaintiff must show that the government "affirmatively created an actual, particularized danger [that the plaintiff] would not

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT - 1
(Case No. 2:23-cv-00540)

1   otherwise have faced." *Sinclair*, 61 F.4th at 681.  As the Ninth Circuit recognized, "[a] 'particular'

2   danger is a danger 'of, relating to, or being a single person or thing.'"  *Id.* at 682.  "A danger is

3   'particularized' if it is directed at a specific victim."  *Id.*

4        Here, as in *Sinclair*, Plaintiff's complaints about graffiti, public safety, police response

5   protocols, property damage, and restricted access to public and private areas (if proven) would

6   have affected the thousands of businesses, residents, and property owners throughout the 16-block

7   "CHOP Area" and Capitol Hill neighborhood equally.  *See, e.g.*, Dkt. 1 at ¶¶ 2, 8, 9, 26, 34, 43-44,

8   47.  In short, none of these alleged dangers was directed at Plaintiff.  They are instead examples of

9   the same allegedly community-wide dangers that the Ninth Circuit rejected in *Sinclair* as

10  insufficiently specific to a particular plaintiff.  61 F.4th at 683-84.

11       The *Sinclair* court's application of the first, "particularized danger" factor is consistent with

12  the Ninth Circuit's state-created danger precedents, generally.  In *Wood v. Ostrander*, 879 F.2d

13  583 (9th Cir. 1989), for example, the police officer's decision to leave a female passenger stranded

14  alone at night in an area he knew to be dangerous exposed her to danger she would not have

15  incurred had the officer not intervened at all.  In *Munger v. City of Glasgow Police Dep't*, 227 F.3d

16  1082 (9th Cir. 2000), the police escorted an intoxicated man out of a bar into sub-zero

17  temperatures, prohibited him from driving or returning to the bar, and watched him walk alone

18  toward a railyard, where he was found dead the next morning.  And in *Hernandez v. City of San*

19  *Jose*, 897 F.3d 1125 (9th Cir. 2018), the police actively prevented Trump campaign-rally attendees

20  from exiting an event toward a safe direction, and instead forced attendees to exit into a crowd of

21  anti-Trump protestors the police knew to be violent, who then attacked them.  In each of these

22  cases, the court recognized that the critical event was the discrete interaction between the police

23  and the particular plaintiff (or specific group of plaintiffs) that directly exposed those same

24

25

26

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT - 2
(Case No. 2:23-cv-00540)

plaintiffs to a particularized danger that they otherwise would not have faced.[1]  No similar facts or allegations exist here.

Plaintiff argues that three paragraphs in its complaint demonstrate the City exposed Plaintiff to a particularized danger.  But the first two of these paragraphs simply allege that Plaintiff communicated with a few City employees about "what Plaintiff was experiencing." Dkt. 1 at ¶¶ 73-74.  Plaintiff does not allege that it was exposed to some greater, specific danger that it would not otherwise have faced as a result of those communications.  The third paragraph Plaintiff cites alleges only that the City provided public-sanitation facilities near Plaintiff's restaurant.  *Id.* at ¶ 64.  Again, Plaintiff fails to allege that the decision to provide these public-sanitation facilities was directed at Plaintiff specifically, or that that they exposed Plaintiff to some greater, particularized danger.  In fact, Plaintiff concedes that it had no interactions with the City about the placement of the public-sanitation facilities.  *Id.* at ¶ 82.  "[E]ven construed in the light most favorable to [Plaintiff], [its] allegations demonstrate that the City-created danger was a generalized danger experienced by all those members of the public who chose to visit the CHOP Zone."  *Sinclair*, 61 F.4th at 683; *see also Hunters Capital*, 2023 WL 184209 at *7 (City's CHOP-related actions were properly characterized as "actions with respect to a dynamic situation occurring in Seattle's Capitol Hill neighborhood, *i.e.*, a situation affecting the general public").

Plaintiff cannot save its substantive due process claim by arguing that dangers allegedly faced by everyone in the neighborhood are sufficiently particularized to support a state-created danger claim.[2]  The Court correctly rejected this exact argument in *Hunters Capital*, 2023 WL 184209 at *10, just as other courts have when considering similar claims.  *White v. City of*

---

[1] As the City argued in its motion, unlike in each of these cases, here it is doubtful that Plaintiff, as an LLC seeking only economic damages, can even assert a claim under the state-created danger exception.  *Railroad 1900, LLC v. City of Sacramento*, 604 F. Supp. 3d 968, 976 (E.D. Cal. 2022).  Plaintiff did not address this argument in its response.

[2] In arguing for class certification in *Hunters Capital* on behalf of putative class members that included Plaintiff, the plaintiffs argued that the 16-block CHOP area includes "at least 4,500 to 5,000 putative class members, comprised of approximately 4,000 residents, 300 businesses, and 600 property owners."  2022 WL 1449387, *4 (W.D. Wash. May 9, 2022).  It is not a discrete and identifiable group.

*Minneapolis*, 2021 WL 5964554 (D. Minn. Dec. 16, 2021) (dismissing substantive due process claim arising out of summer 2020 protest because "members of an affected group that includes, at least, all residents and business owners in the Third Precinct" neighborhood "can be fairly understood to be the general public"). Plaintiff's attempt to leverage dicta in *Sinclair* regarding this Court's original motion to dismiss order in *Hunters Capital* likewise cannot save Plaintiff's complaint because the Ninth Circuit made clear that it was "offer[ing] no opinion on [this Court's motion to dismiss order in] *Hunters Capital.*" 61 F.4th at 683. As such, this Court should not draw any conclusions from the Ninth Circuit's language regarding that order.

Plaintiff has not alleged that the City directed any danger specifically at Plaintiff. Its substantive due process claim should be dismissed.

### 2. Plaintiff Has Not Alleged the City Acted with Deliberate Indifference toward Plaintiff.

In *Sinclair*, the Ninth Circuit held that the plaintiff's allegations supported a reasonable inference that the City acted with deliberate indifference "toward the dangers of permitting and encouraging establishment of the CHOP zone." *Id.* at 681. The Court was careful to note, however, that the City's specific actions with respect to the plaintiff did not demonstrate deliberate indifference. *Id.*

Likewise here, Plaintiff cannot show that the City's actions toward Plaintiff specifically were deliberately indifferent. The City's placement of public-sanitation equipment like trash receptacles and port-a-potties in the right of way near Plaintiff's business in order to provide "public-sanitation support" for the protestors, Dkt. 1 at ¶ 64, does not "shock the conscience." Nor does Plaintiff allege any facts indicating that the City knew that placing the facilities near Plaintiff's location would likely cause harm to Plaintiff's business, let alone that the City intended to harm Plaintiff by placing the services there.

In determining whether Plaintiff has stated a claim for relief, the Court need not draw

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT - 4
(Case No. 2:23-cv-00540)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

implausible inferences.  Rather, the Court should "draw on [its] judicial experience and common sense" and consider "obvious alternative explanations."  *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011).  Doing so here indicates that it is more likely that the City placed public-sanitation equipment near the edge of the park (and near Plaintiff's business) as part of its "sanitation services to combat the spread of COVID and other diseases" during the summer of 2020, rather than with the intent to expose Plaintiff to some heightened danger.  *Hunters Capital*, 2023 WL 184209 at *8.  Plaintiff has not alleged facts from which it is reasonable to infer that the City's actions toward Plaintiff were undertaken with deliberate indifference.

**B.      Plaintiff Fails to State a Viable Takings Claim.**

**        1.      Plaintiff's *Per Se* Takings Claim Should be Dismissed.**

Plaintiff asks the Court to ignore its dismissal of an identical claim in *Hunters Capital*, 2023 WL 184209 at *9, but alleges no facts that would justify the Court's departure from its decision there.  Plaintiff relies on *Cedar Point Nursery v. Hassid*, but central to the Court's ruling in *Cedar Point* was the fact that California had adopted a regulation that "formally entitled" labor organizations to access employers' property.  141 S. Ct. 2063, 2069 (2021).  It was the enactment of this regulation, which formally deprived the property owners of their right to exclude third parties from their property, that created a *per se* physical taking.  *Id.* at 2080.

Plaintiff does not allege any such regulation or formal entitlement here.  Instead, Plaintiff vaguely alleges that the City "endors[ed]" and "encourag[ed]" third-parties' trespasses.  But these allegations fall far short of the type of formal regulation the Court found necessary in *Cedar Point*.  And while Plaintiff alleges that SPD adopted a policy and practice of not entering the "red zone" to respond in person to minor crimes, there is no constitutional entitlement to an in-person police response.  *See Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).

More critically, nothing in SPD's alleged "red zone" policy required Plaintiff (or any other

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT - 5
(Case No. 2:23-cv-00540)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

private party) to allow third parties onto its property.  The Court in *Cedar Point* was careful to differentiate between regulations granting "formal entitlements" to enter property, which could constitute takings, from unlawful trespasses.  141 S. Ct. at 2080 ("Unlike a mere trespass, the regulation grants a formal entitlement to physically invade the growers' land.").  Plaintiff has not stated a cognizable *per se* takings claim and the claim should be dismissed with prejudice.

### 2. Plaintiff Cannot State a Claim for Diminished Access; Washington Does Not Recognize a Property Interest Against Temporary or Intermittent Access Disruptions.

It is well-settled that, "[p]roperty interests are not constitutionally created; rather, protected property rights are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Vandevere v. Lloyd,* 644 F.3d 957, 963 (9th Cir. 2011) (citations omitted).  The Court must "look to state law to determine what property rights exist and therefore are subject to 'taking' under the Fifth Amendment." *Id.*

Under Washington law, courts employ a two-step process to determine whether government impairment of access infringes on a protected property right.  First, courts "determine if the government action in question has actually interfered *with the right of access as that property interest has been defined by*" Washington law. *Keiffer v. King County*, 572 P.2d 408 (Wash. 1977) (emphasis added).  If such interference is found, the second step is to determine whether the degree of impairment is substantial. *Id.*

Here, the Court need consider only the first step, because Washington does not recognize a property interest in freedom from temporary or intermittent access impairments. *Stern v. City of Spokane*, 131 P. 476, 477 (Wash. 1913) ("temporary obstructions" to access provide no right to recovery); *Pande Cameron & Co. of Seattle, Inc. v. Cent. Puget Sound Regl. Transit Auth.*, 610 F. Supp. 2d 1288, 1301, 1304 (W.D. Wash. 2009) (recognizing that "temporary interferences with a property right are not constitutional takings of property" under Washington law and that "there is no authority under Washington law for a temporary 'right of access' takings claim"); *Quicksilver*

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*Audio, Ltd. v. City of Kennewick*, 2008 WL 5170446, *2 (E.D. Wash. Dec. 9, 2008) ("under Washington law, a claim for 'interference with access'…is limited to damages arising from a complete, permanent loss of access").  As the court confirmed in *Pande Cameron*, because the diminishment in access was temporary, it did not interfere with the right of access as that property interest has been defined by Washington law, making it unnecessary for the Court to even consider the second, "substantial impairment" *Keiffer* step.  610 F. Supp. 2d at 1288 n.2.

Plaintiff does not address these cases, effectively conceding that Washington law does not recognize a property interest against temporary or intermittent access interruptions.  Instead, again relying on *Cedar Point*, Plaintiff argues that federal, rather than Washington, law should apply.  But in *Cedar Point*, the Court made clear that "property rights protected by the Takings Clause are creatures of state law."  141 S. Ct at 2076.  Moreover, *Cedar Point* involved a *per se* physical taking, not a claim for diminished access, and is inapposite.[3]  Plaintiff's reliance on *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23 (2012), is similarly misplaced, as it too involved a physical invasion (flooding) of the plaintiff's property, not a claim for diminished access.[4]

Plaintiff next cites to regulatory takings cases for the proposition that "the federal constitution sets a minimum floor of protection, below which state law may not go."  Response at 15.  These cases, too, are inapposite because Plaintiff does not allege a regulatory taking.  *See Pande Cameron*, 610 F. Supp. 2d at 1306.  Further, Washington "has always attempted to define regulatory takings consistent with federal courts applying the takings clause of the Fifth Amendment."  *Chong Yim v. City of Seattle*, 451 P.3d 675, 682 (Wash. 2019).  Finally, even if federally-created, rather than state-created, property interests applied, federal law is consistent with

---

[3] The *Pande Cameron* court rejected this same argument, recognizing the fundamental difference between a diminished access claim and a claim for a *per se* physical taking.  610 F. Supp. 2d at 1306.

[4] Plaintiff's response also contains a lengthy discussion of what is required for a *per se* physical interference to be "permanent or recurring."  But here again, Plaintiff's complaint does not allege any facts that would support application of these principles.  Plaintiff concedes that any access disruptions were, at most, intermittent over a three-week period running from June 9, 2020 through July 1, 2020.

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT - 7
(Case No. 2:23-cv-00540)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

Washington law in holding that temporary access impairments do not give rise to takings claims. *Poorbaugh v. United States*, 27 Fed. Cl. 628, 633 (1993) ("in order for plaintiffs to prevail on their second allegation [taking based on diminished access], there must be evidence of a complete denial or deprivation of access to plaintiffs' property").

Here, Plaintiff's complaint alleges only that access was impaired intermittently, on "multiple occasions" during June 2020.  Dkt. 1 at ¶ 68.  Further, Plaintiff acknowledges that it was open for business every day except June 20, when it chose to close for safety reasons, and concedes that by July 1, 2020, all of the roads and sidewalks around Plaintiff's location had been cleared of impediments.  *Id.*, ¶¶ 70, 89.  These intermittent and temporary access impairments cannot support a takings claim.

**3.      Certification is Appropriate if the Court Believes that a Question Exists as to Whether Washington Would Recognize a Property Interest Against Certain Temporary and Intermittent Access Impairments.**

Plaintiff argues that certification is unnecessary because *Stern*, *Pande Cameron*, and *Quicksilver Audio* reflect Washington law on this issue and no party has identified any cases to the contrary—*i.e.* there is no dispute that Washington law is "clearly determined."  Response at 17. The City agrees, and the Court should dismiss Plaintiff's claim accordingly.  However, if the Court is unsure whether these Washington precedents apply, either because of some nuance the Court believes exists under Washington law, because of the purpose of the impairments, or because of recent decisions like *Cedar Point* or *Chong Yim*, then certification would be appropriate.

Plaintiff's argument that the City's request is too late also is misplaced.  The Court has not yet ruled on the City's motion to dismiss Plaintiff's lack of access takings claim.  While the Court ruled on similar claims made by the plaintiffs in *Hunters Capital*, this is the first opportunity that the City has had to request certification in this case.  Its request is therefore timely.  Even if the Court had previously ruled on this issue in this case, the Court would nonetheless have discretion to certify the question to the Supreme Court.  *Taylor v. Kahne Corp.*, 2006 WL 1587442 (W.D.

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT - 8
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1  Wash. June 5, 2006).

2  **C.     Plaintiff Fails to State a Cognizable Negligence Claim.**

3           Plaintiff concedes that its negligence claim mirrors the plaintiffs' negligence claim the

4  Court dismissed in *Hunters Capital*, asking the Court to reconsider its decision.  Response at 18.

5  But the Court's analysis was correct the first time.  Courts construe the failure to enforce exception

6  narrowly.  *Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 799 P.2d 250

7  (Wash. 1990).  To state a claim under this exception, a plaintiff must allege facts indicating:

8           [(1)] governmental agents responsible for enforcing statutory requirements
         possess actual knowledge of a statutory violation, [(2)] fail to take corrective
9         action despite a statutory duty to do so, and [(3)] the plaintiff is within the class
         the statute intended to protect.
10
11  *Ehrhart v. King County*, 460 P.3d 612, 619 (Wash. 2020).  Here, Plaintiff cannot satisfy at least the

12  second two factors as a matter of law.

13         **1.     Plaintiff Cannot Establish that Any Statute Obligates the City to take**
                 **Corrective Action that the City Failed to Take.**
14
15         The second failure-to-enforce element requires that Plaintiff point to a statute that

16  "create[s] a mandatory duty to take specific action to correct" a statutory violation.  *Smith v. City*

17  *of Kelso*, 48 P.3d 372, 375 (Wash. Ct. App. 2002).  This element can only be triggered where a

18  statute or ordinance "prohibit[s] specific conduct and require[s] a public official to take specific

19  action to correct a violation."  *Id.*

20         Plaintiff's claim is based on the same three fire code sections this Court analyzed in

21  *Hunters Capital*.  2023 WL at 184209 at *12; Response at 16-17.  Fire Code Sections 503.4 and

22  104.11.2 simply outline potential fire code violations and cannot support a claim under this

23  exception.  *Ehrhart*, 460 P.3d at 620 ("a requirement to comply with regulations is different from a

24  requirement to enforce those regulations").  Neither of these sections obligates the City to take a

25  specific action to correct a fire code violation.

26         Plaintiff's reliance on Fire Code Section 503.1 is similarly misplaced.  As the Washington

---

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT - 9
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1   Supreme Court has recognized, "[n]o Washington case … has applied the failure-to-enforce

2   exception where the defendant government entity fails to take corrective action against itself."

3   *Ehrhart*, 460 P.3d at 621 (citing *Woods View II, LLC v. Kitsap County*, 352 P.3d 807 (Wash. Ct.

4   App. 2015)).

5           This element cannot be met where "the statute vests the public official with broad

6   discretion" in determining whether to take corrective action.  *Smith*, 48 P.3d at 375.  As the Court

7   recognized in *Hunters Capital*, 2023 WL 184209 at *12, the Fire Code explicitly makes

8   enforcement of its provisions discretionary:  "No provision or term used in this code is intended to

9   impose any duty whatsoever upon the city, or any of its officers or employees, for whom the

10  implementation or enforcement of this code is discretionary, not mandatory." Dkt. 18-1 at p. 3.

11          The Street Use Ordinance similarly cannot support a claim.  Plaintiff argues that third

12  parties are obligated to obtain a permit for events like CHOP, but points to no statutory language

13  requiring the City to take a specific corrective action where the third party fails to do so.  *See*

14  *Hunters Capital*, 2023 WL 184209 at 13 ("Plaintiffs have not cited, however, any provision in

15  Seattle's Street Use Ordinance that requires the City to take specific action if an individual fails to

16  obtain a permit or authorization.").  Further, as with the Fire Code, the Street Use Ordinance is

17  clear that no mandatory duty exists to enforce its requirements:  "[N]o provision of nor term used

18  in this Street Use Ordinance is intended to impose any duty whatsoever upon the City or any of its

19  officers, employees, or agents; for whom the implementation or enforcement of this Street Use

20  Ordinance shall be discretionary and not mandatory."  SMC 15.02.025(D).

21          Another section similarly provides that "the Director of the Seattle Department of

22  Transportation is authorized to enforce [the Street Use Ordinance]," and that "[t]he Director may

23  call upon the police, fire, health or other appropriate City departments to assist in enforcement,"

24  but that the provision is not "intended to impose any duty upon the City."  SMC § 15.90.004(A) &

25  (E).  The absence of any language mandating enforcement, rather than simply authorizing it, is also

26

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT - 10
(Case No. 2:23-cv-00540)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1  fatal to Plaintiff's claim.  *See Forest v. State*, 814 P.2d 1181, 1185 (Wash. Ct. App. 1991)

2  (language such as "may" indicates absence of mandatory duty to take specific action).

3      In fact, the only mandatory-sounding language to which Plaintiff points in the Street Use

4  Ordinance is the word "shall" in the ordinance's directive that the code "shall be enforced for the

5  benefit of the health, safety and welfare of the general public and not for the benefit of any

6  particular person or class of persons."  SMC 15.90.004(C).  Far from mandating any specific

7  action, this language simply clarifies that Plaintiff cannot satisfy the third failure-to-enforce

8  element either.

9      **2.      Plaintiff is not Within the Class that Either the Fire Code or the Street Use
                  Ordinance was Intended to Protect.**

10

11      Plaintiff also cannot meet the third failure-to-enforce element.  Both the Fire Code and the

12  Street Use Ordinance are enacted for the benefit of the public, generally, and not any specific class

13  of persons that would include Plaintiff.  Motion at 19 (quoting SMC 15.02.025(C) and Seattle Fire

14  Code § 101.3).[5]

15      Plaintiff asks the court to ignore this clear legislative language, arguing that it is irrelevant

16  to the failure to enforce exception.  This is simply wrong.  The Washington Supreme Court has

17  specifically recognized that similar statutory language is dispositive in determining the class of

18  persons the statute is intended to protect.  *Ehrhart*, 460 P.3d at 623.  As the Court held:

19      The plain language of this section makes clear that the class of people meant to be
        protected by [the statute] is the public as a whole.  The regulation does not

20      identify any particular group of or category of individuals to whom governments
        owe a special obligation …. Because [it] creates only a general obligation to the

21      public and not a duty to any particular individuals, [Plaintiff] cannot meet the
        third element to the failure to enforce exception as a matter of law.

22

23  *Id.* at 623.  As the Court recognized in *Hunters Capital*, the existence of similar language in both

24

25  ───────────────

[5] Plaintiff argues that it is within the "ambit of risk" protected by these statutes.  But as the Court correctly recognized, the ambit of risk describes the scope of a municipality's duty where a protected class exists.  *Hunters Capital*, 2023 WL 184209 at *12 n.18; *Bailey v. Town of Forks*, 737 P.2d 1257, 1261 (Wash. 1987).  Here, because none of the relevant code sections were intended to protect any class of persons, there is no "ambit of risk" to consider.

26

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT - 11
(Case No. 2:23-cv-00540)

1   the Fire Code and the Street Use Ordinance means that neither statute creates a duty owed to

2   Plaintiff.  2023 WL 184209, *13.[6]

3                                    **III.    CONCLUSION**

4          For all of the reasons set forth herein, the Court should grant the City's motion.

5                  DATED this 9th day of June, 2023.

6                                                      I certify that this memorandum contains 4,066 words,
                                                       in compliance with the Local Civil Rules.
7

8                                                      HARRIGAN LEYH FARMER & THOMSEN LLP

9                                                      By: _s/ Arthur W. Harrigan, Jr._____
                                                       By: _s/ Tyler L. Farmer_____
10                                                     By: _s/ Shane P. Cramer_____
                                                       By: _s/ Erica R. Iverson_____
11                                                         Arthur W. Harrigan, Jr., WSBA #1751
                                                           Tyler L. Farmer, WSBA #39912
12                                                         Shane P. Cramer, WSBA #35099
                                                           Erica R. Iverson, WSBA #59627
13                                                         999 Third Avenue, Suite 4400
                                                           Seattle, WA 98104
14                                                         Tel:  (206) 623-1700
15                                                         arthurh@harriganleyh.com
                                                           tylerf@harriganleyh.com
16                                                         shanec@harriganleyh.com
                                                           ericai@harriganleyh.com
17

18                                                     *Attorneys for City of Seattle*

19

20

21

22

23

24

25   _____
     [6] Neither of the cases Plaintiff cites undercut this holding.  In *Donohoe v. State*, 142 P.3d 654 (Wash. Ct. App. 2006),
     and *U.S. Oil Trading, LLC v. State Office of Financial Management*, 249 P.3d 630 (Wash. Ct. App. 2011), the courts
26   dismissed the plaintiffs' failure-to-enforce exception before reaching the third element.

DEFENDANT CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT - 12
(Case No. 2:23-cv-00540)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717