UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

3PAK LLC d/b/a OMA BAP,

Plaintiff,

v.

CITY OF SEATTLE,

Defendant.

C23-0540 TSZ

ORDER

THIS MATTER comes before the Court on a motion to dismiss, docket no. 17, brought by defendant City of Seattle (the "City"). Having reviewed all papers filed in support of, and in opposition to, the motion, the Court determines that oral argument is unnecessary and enters the following Order.

**Background**

This action arises from the City's response to the Capitol Hill Organized Protest ("CHOP") in June 2020. Compl. at ¶ 1 (docket no. 1). Plaintiff 3Pak LLC d/b/a Oma Bap ("Oma Bap") is a Korean restaurant located at 1640 11th Avenue, directly across the street from Cal Anderson Park in Seattle's Capitol Hill neighborhood. *Id.* at ¶¶ 14, 32. Counsel and the Court are well acquainted with the City's response to CHOP, which was the subject of prior litigation involving multiple property owners, businesses, and residents in the Capitol Hill neighborhood who alleged that the City's support,

encouragement, and endorsement of CHOP violated their legal rights.  *See Hunters Capital, LLC v. City of Seattle*, No. C20-983 TSZ (W.D. Wash.) [hereinafter the "*Hunters Capital* matter"].[1]  Notably, Oma Bap brings several of the same claims that this Court heard in the *Hunters Capital* matter, namely (i) violation of substantive due process, (ii) taking under "*per se*" and "right of access" theories of liability, (iii) negligence, and (iv) nuisance.[2]  Compl. at ¶¶ 90–118.  Like the plaintiffs in the *Hunters Capital* matter, Oma Bap alleges that the City's "support, encouragement, and endorsement" of CHOP violated its rights and caused it significant financial harm.  *See id.* at ¶¶ 10, 66–76.

As this Court has discussed in great detail in its orders in the *Hunters Capital* matter, CHOP began on June 8, 2020, when the City "abruptly deserted" the Seattle Police Department's East Precinct, located at 12th Avenue and East Pine Street, amid ongoing civil rights protests.  *See id.* at ¶¶ 3, 18.  After the City "abandoned the precinct," protesters repurposed barriers that police had left behind and blocked public streets and sidewalks in the surrounding area.  *Id.* at ¶¶ 4, 19–20.  In the days and weeks that

---

[1] Counsel for Oma Bap represented plaintiffs in the *Hunters Capital* matter.  Likewise, the City has been represented by the same counsel in both actions.

[2] On January 13, 2023, this Court granted in part and denied in part the City's motion for summary judgment in the *Hunters Capital* matter, and dismissed the plaintiffs' claims for violation of procedural due process, violation of substantive due process, and negligence.  *Hunters Capital, LLC v. City of Seattle*, --- F. Supp. 3d ---, 2023 WL 184209, at *15–16 (W.D. Wash. Jan. 13, 2023).  The Court also granted the City's motion for summary judgment as it related to plaintiffs' taking claim under a *per se* theory of liability.  *Id.* at *16.  The Court denied the City's motion with respect to the plaintiffs' claims for nuisance and taking under a right of access theory of liability.  *Id.*  The parties ultimately reached a settlement in the *Hunters Capital* matter and the Court dismissed the action on February 16, 2023.  Order of Dismissal (C20-983 TSZ, docket no. 182).

ORDER - 2

1  followed, the CHOP area expanded to an approximately 16-block portion of the Capitol

2  Hill neighborhood.  *Id.* at ¶¶ 5, 20–22.  CHOP's unofficial boundaries allegedly extended

3  from East Denny Way (to the north), Thirteenth Avenue (to the east), East Pike Street (to

4  the south), and Broadway (to the west).  *Id.* at ¶ 22.  Oma Bap alleges that the City

5  provided Cal Anderson Park, a public park located at the center of the CHOP area, as a

6  staging ground for protest activities.  *Id.* at ¶ 6.  As a result, Cal Anderson Park was

7  "transformed into a massive tent city for CHOP participants."  *Id.* at ¶ 33.

8        According to Oma Bap, the City supported CHOP and its participants by placing

9  large dumpsters and portable toilets at the intersection of Eleventh Avenue and Olive

10  Street, "just outside" Oma Bap's front door.  *Id.* at ¶ 64.  The City's placement of these

11  dumpsters and portable toilets resulted in the accumulation of garbage and human waste

12  outside of the business, "making the area unsightly, unsanitary, unsafe, and treacherous to

13  navigate."  *Id.*  The area was also difficult to traverse because CHOP participants

14  regularly relocated makeshift and City-provided barriers to block public streets and

15  sidewalks throughout the CHOP area, including the intersection of Eleventh Avenue and

16  Olive Street.  *Id.* at ¶ 62.  Oma Bap contends that many of its employees, suppliers, and

17  customers could not "safely access" the business or decided to avoid the area entirely

18  during CHOP, resulting in decreased revenue and profits.  *Id.* at ¶¶ 63, 67.

19        Because police officers would enter the CHOP area only under certain, limited

20  circumstances, the City observed an increase in criminal activity, including two fatal

21  shootings, harassment, and vandalism.  *Id.* at ¶¶ 40–46, 80.  Oma Bap alleges that it

22  suffered thousands of dollars in damages from vandalism to its business, "including

23

1    numerous times that its store windows were scratched or shattered by people residing in

2    Cal Anderson Park." *Id.* at ¶ 72.  Oma Bap also suffered losses when individuals posing

3    as delivery drivers stole food, beverages, and snacks from the establishment.  *Id.* at

4    ¶ 68.e.  Although the City cleared the area of barricades and encampments on July 1,

5    2020, officially ending CHOP, Oma Bap alleges that, shortly thereafter, the City allowed

6    individuals to reoccupy Cal Anderson Park, where they engaged in regular, unpermitted

7    protests until December 2020.  *Id.* at ¶¶ 89, 95.  Oma Bap contends that the reoccupation

8    of Cal Anderson Park continued to harm its business because the encampment was

9    located "only a few dozen feet" from its front door.  *Id.* at ¶ 37.

10        Oma Bap commenced this action on April 6, 2023, and the City now moves under

11    Federal Rule of Civil Procedure 12(b)(6) to dismiss Oma Bap's claims for (i) violation of

12    substantive due process, (ii) taking under *per se* and "right of access" theories of liability,

13    and (iii) negligence.

14    **Discussion**

15    **1.**    **Rule 12(b)(6) Standard**

16        Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not

17    provide detailed factual allegations, it must offer "more than labels and conclusions" and

18    contain more than a "formulaic recitation of the elements of a claim."  *Bell Atl. Corp. v.*

19    *Twombly*, 550 U.S. 544, 555 (2007).  The complaint must indicate more than mere

20    speculation of a right to relief.  *Id.*  When a complaint fails to adequately state a claim,

21    such deficiency should be "exposed at the point of minimum expenditure of time and

22    money by the parties and the court."  *Id.* at 558.  A complaint may be lacking for one of

23

1    two reasons:  (i) absence of a cognizable legal theory, or (ii) insufficient facts under a

2    cognizable legal claim.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534

3    (9th Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the

4    plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  *Usher v.*

5    *City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is

6    whether the facts in the complaint sufficiently state a "plausible" ground for relief.

7    *Twombly*, 550 U.S. at 570.  If the Court dismisses the complaint or portions thereof, it

8    must consider whether to grant leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

9    Cir. 2000).

10   **2.      First Claim:  Substantive Due Process**

11          Oma Bap's first claim alleges that the City violated its Fourteenth Amendment

12   substantive due process right "to be protected from state-created dangers."  Compl. at

13   ¶ 91.  Specifically, Oma Bap contends that the City's assistance, endorsement, and

14   encouragement of CHOP and its participants "greatly increased the likelihood of property

15   damage, loss of business revenue, loss of use of property, and other damage to" its

16   business.  *Id.* at ¶ 92.  Oma Bap's claim mirrors the substantive due process claims

17   brought by the *Hunters Capital* plaintiffs, which this Court dismissed at the summary

18   judgment stage in that matter.  *See* 3d Am. Compl. at ¶¶ 197–202 (C20-983 TSZ, docket

19   no. 47); *Hunters Capital*, 2023 WL 184209, at *15.

20          Importantly, the Due Process Clause does not, on its face, require a governmental

21   entity "to protect the life, liberty, and property of its citizens against invasion by private

22   actors," *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989),

23

1   and, "[a]s a general rule, members of the public have no constitutional right to sue

2   [governmental actors] who fail to protect them against harm inflicted by third parties,"

3   *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992) (citing *DeShaney*, 489 U.S. at 197);

4   *see also Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019).  Like the

5   plaintiffs in the *Hunters Capital* matter, Oma Bap relies on a single exception to this

6   general rule, namely the state-created danger exception.  Compl. at ¶¶ 91–96.

7           To prevail on a state-created danger claim, Oma Bap must establish that (i) the

8   City's affirmative actions created or exposed it to an actual, particularized danger that it

9   would not have otherwise faced, (ii) it suffered a foreseeable injury, and (iii) the City was

10  deliberately indifferent to the known danger.  *See Sinclair v. City of Seattle*, 61 F.4th 674,

11  680 (9th Cir. 2023) (citing *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133–34 (9th

12  Cir. 2018)).  The City contends that Oma Bap's substantive due process claim fails

13  because it has not plausibly alleged either that the City exposed it to an actual,

14  particularized danger it would not have otherwise faced, or that the City acted with

15  deliberate indifference to that danger.  In contrast, Oma Bap argues that its factual

16  allegations are "more than adequate" to state a substantive due process claim in light of

17  the Ninth Circuit's recent opinion in *Sinclair*, another CHOP-related case.  Oma Bap

18  contends that Ninth Circuit's opinion in *Sinclair* casts serious doubt on this Court's

19  dismissal of the plaintiffs' substantive due process claims in the *Hunters Capital* matter.

20          In *Sinclair*, a mother brought suit against the City after her nineteen-year-old son

21  was shot to death within the CHOP area in June 2020.  61 F.4th at 676–77.  In affirming

22  the district court's dismissal of the mother's substantive due process claim, the *Sinclair*

23

ORDER - 6

1  Court explained that, although the mother adequately alleged "that the City created, or at

2  least significantly contributed to, the danger her son faced," she failed to allege that the

3  danger was "sufficiently particularized" to support her claim.  *Id.* at 682.  The Ninth

4  Circuit concluded that "any danger the City created or contributed to by enabling the

5  CHOP area affected all CHOP visitors equally; the danger was not specifically directed

6  at" her son.  *Id.*  Stated differently, the dangers her son faced "as a result of the City

7  ignoring the lawlessness and crime occurring in CHOP were the same as [those of]

8  anyone else" in the area.  *Id.*  Although it offered "no opinion" on the *Hunters Capital*

9  plaintiffs' substantive due process claims, the Ninth Circuit recognized, in dicta, that the

10  facts alleged by the *Hunters Capital* plaintiffs were "appreciably closer to meeting the

11  particularity standard" than the mother's allegations in *Sinclair*.  *Id.* at 683 (citing

12  *Hunters Capital LLC v. City of Seattle*, 499 F. Supp. 3d 888 (W.D. Wash. 2020) (ruling

13  on the City's motion to dismiss)).

14      Despite Oma Bap's argument to the contrary, the Ninth Circuit's opinion in

15  *Sinclair* has not "*de facto* overruled" this Court's order in the *Hunters Capital* matter

16  granting the City's motion for summary judgment as it related to the plaintiffs'

17  substantive due process claims.  Like the mother's allegations in *Sinclair*, Oma Bap has

18  failed to plausibly allege that the City's response to CHOP created a particularized

19  danger for Oma Bap.  *See* 61 F.4th at 682 (explaining that "[a] danger is 'particularized'

20  if it is directed at a specific victim").  Although Oma Bap alleges that the City knew of

21  the harm it was suffering during CHOP because Oma Bap regularly complained to City

22  officials about the specific adverse effects CHOP was having on its business, *see* Compl.

23

ORDER - 7

at ¶¶ 73–74, the danger alleged in the operative complaint was not directed specifically at Oma Bap or any discrete and identifiable group.  Rather, Oma Bap alleges that the City created a generalized danger for all businesses, property owners, and residents in the CHOP area and the Capitol Hill neighborhood.[3]

Notably, cases in which the Ninth Circuit has recognized a state-created danger involve allegations that governmental actors (typically law enforcement officers) exposed individual plaintiffs or discrete groups of plaintiffs to specific, immediate, and particularized harm.  *See*, *e.g.*, *Wood v. Ostrander*, 879 F.2d 583, 586 (9th Cir. 1989) (police impounded a vehicle and abandoned a woman in a high-crime area where she was subsequently raped); *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1084–85 (9th Cir. 2000) (police ejected an intoxicated man, who was wearing only jeans and a t-shirt, from a bar into subfreezing winter weather, as a result of which he died of hypothermia); *Hernandez v. City of San Jose*, 897 F.3d 1125, 1128–1130 (9th Cir. 2018) (police directed a group of pro-Trump rally attendees into a group of anti-Trump

_____

[3] *See*, *e.g.*, Compl. at ¶ 2 (docket no. 1) ("The City's [response to CHOP] subjected businesses, employees, and residents of [the Capitol Hill] neighborhood to extensive property damage, public safety dangers, and an inability to use and access their properties."); *see also id.* at ¶ 9 ("The City's conduct enabled the widespread destruction and vandalism of private property [in the CHOP area]."); *id.* at ¶ 10 ("The property owners, businesses, and residents in the area suffered ever-increasing property damage and economic loss every day that CHOP existed in their neighborhood."); *id.* at ¶ 81.a ("The City deliberately and actively chose to preserve and facilitate the occupation [of the CHOP area], through the various means described throughout this complaint, at the expense of individuals living and working in the neighborhood, including [Oma Bap]."); *id.* at ¶ 81.b ("The City kept its own employees out of the area as much as possible, fearing for their safety, but left individuals who lived and worked in the neighborhood, including [Oma Bap], to fend for themselves with no police response."); *id.* at ¶ 82 ("The City also enabled the blocking of ingress and egress for businesses and residents in the area[.]"); *id.* at ¶ 94 ("Numerous officials at the City foresaw that its actions would increase crime and harm to businesses in the area.").

1   protesters, some of whom assaulted the plaintiffs).  The alleged dangers in this case,

2   namely an increased likelihood of property damage, loss of business revenue, and loss of

3   use of property, *see* Compl. at ¶¶ 92–95, purportedly lasted from June to December 2020

4   and, according to Oma Bap's complaint, affected all businesses, employees, and residents

5   of Seattle's Capitol Hill neighborhood, *see id.* at ¶ 2.  In other words, the City's response

6   to CHOP was not directed toward Oma Bap and did not otherwise expose Oma Bap to

7   any particularized harm.  The Court therefore GRANTS the City's motion to dismiss as it

8   relates to Oma Bap's first claim for substantive due process.[4]  Although the Court is

9   skeptical that Oma Bap can cure these factual deficiencies through additional allegations,

10  the claim is DISMISSED without prejudice and with leave to amend.

11  **3.      Second Claim:  Taking**

12          Oma Bap's second claim alleges that the City effected a taking of its

13  constitutionally protected rights to exclude others from its property (a *per se* theory of

14  liability) and to access its property via public rights-of-way (a right of access theory of

15  liability).  Compl. at ¶¶ 98–101.

16          With respect to its claim of taking under a *per se* theory of liability, Oma Bap has

17  not pleaded any facts to support that the City expressly authorized third-party physical

18  invasions of its property.  Although the right to exclude is a "fundamental element of the

19  property right," *Kaiser Aetna v. United States*, 444 U.S. 164, 179–80 (1979), and is not

20

21  [4] The Court DENIES the City's motion to the extent that it is premised on a failure to adequately plead
    the requisite deliberate indifference toward the dangers of supporting, encouraging, and endorsing CHOP

22  and its participants.

23

"an empty formality, subject to modification at the government's pleasure," *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2077 (2021), third-party trespass, without more, does not constitute an actionable taking.  Unlike *Cedar Point*, in which a California regulation granted union organizers the right to enter private farmland, 141 S. Ct. at 2069,  or *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), in which a New York statute authorized a third party to install cable equipment on private apartment buildings, *id.* at 421, in this case, Oma Bap has not alleged that the City granted CHOP participants a "formal entitlement" to enter its business.  *See Cedar Point*, 141 S. Ct. at 2079–80 ("Unlike a mere trespass, [California's] regulation grants a *formal entitlement* to physically invade the growers' land." (emphasis added)).  Rather, the only reasonable inference drawn from Oma Bap's complaint is that some CHOP participants independently entered its property without permission and that Oma Bap's reports of trespass received no response from the police.  Compl. at ¶ 68.e.

Oma Bap also fails to plausibly allege its taking claim under a right of access theory of liability.  Although an owner's right of access to his or her property is recognized under Washington law, *Keiffer v. King County*, 89 Wn.2d 369, 372–73, 572 P.2d 408 (1977), a right of access taking claim is not without limit, and Oma Bap must allege "more than mere inconvenience at having to travel a further distance to its business facility."  *See Union Elevator & Warehouse v. Washington*, 96 Wn. App. 288, 296, 980 P.2d 779 (1999); *see also Pande Cameron & Co. of Seattle, Inc. v. Cent. Puget Sound Reg'l Transit Auth.*, 610 F. Supp. 2d 1288, 1303–04 (W.D. Wash. 2009) (holding that "intermittent inconveniences" related to a tunnel construction project did not rise to the

level of a constitutional taking).  Here, Oma Bap contends that the "streets and sidewalks directly adjacent to Oma Bap and in the nearby area were constantly impeded" during and after CHOP.  Compl. at ¶ 61.  Oma Bap also alleges that the "City reached an informal agreement with CHOP participants to provide dozens of concrete barriers to allow limited one-way access on Eleventh[5] and Twelfth Avenues starting on June 16, 2020."  *Id.* at ¶ 82.  Although Oma Bap contends that the City turned the intersection nearest its business into the "epicenter" of public sanitation efforts in the CHOP area, "making the area unsightly, unsanitary, unsafe, and treacherous to navigate," *id.* at ¶ 64, Oma Bap does not allege that its employees, suppliers, and customers were unable to access the business during and after CHOP; Oma Bap asserts only that they chose not to come to the business based on safety concerns, *id.* at ¶ 63 ("In many cases, this meant that [Oma Bap's] employees, suppliers, and customers could not *safely* access [its] business or *simply avoided the area* entirely." (emphasis added)).  In sum, Oma Bap has not plausibly alleged that access to its business was eliminated or substantially impaired.

Because Oma Bap has not adequately pleaded a taking claim against the City under either a *per se* or right of access theory of liability, the City's motion to dismiss is GRANTED as it relates to Oma Bap's second claim for taking, and this claim is DISMISSED without prejudice and with leave to amend.

---

[5] Oma Bap is located on Eleventh Avenue.  Compl. at ¶ 14.

### 4.    Third Claim:  Negligence

Oma Bap's third claim alleges that the City breached a duty owed to it under the Seattle Municipal Code and the Seattle Fire Code.   Compl. at ¶ 105–111.   Oma Bap contends the City failed to enforce a provision of the Seattle Municipal Code that allegedly requires it to designate "an alternate proposal for those who wished to create and participate in CHOP and otherwise occupy Cal Anderson Park."  *Id.* at ¶ 109.   Oma Bap also alleges that the City failed to clear public streets as required by the Seattle Fire Code.  *Id.*

Under Washington law, a plaintiff must prove four elements to prevail on a negligence claim:  (i) "the existence of a duty"; (ii) "a breach of that duty"; (iii) "a resulting injury"; and (iv) "the breach [w]as the proximate cause of the injury."  *Ehrhart v. King County*, 195 Wn.2d 388, 396, 460 P.3d 612 (2020).   "When the defendant in a negligence action is a governmental entity, the public duty doctrine provides that a plaintiff must show the duty breached was owed to him or her in particular, and was not . . . an obligation owed to the public in general."  *Munich v. Skagit Emergency Commc'n Ctr.*, 175 Wn.2d 871, 878, 288 P.3d 328 (2012).   Essentially, "a duty owed to all is a duty owed to none."  *Id.*

Although Washington courts recognize four exceptions to this doctrine, Oma Bap relies on only the "failure-to-enforce" exception.  *See* Resp. at 18 (docket no. 19) .   The failure-to-enforce exception "recognizes that some statutes impose on [the] government a duty owed to a particular class or category of individuals, such that the failure to enforce those statutes breaches a duty that can sustain an action in tort."  *Hunters Capital*, 2023

1   WL 184209, at *11 (alteration in original, quoting *Ehrhart*, 195 Wn.2d at 402).  To prove

2   that the exception applies, a plaintiff must show that (i) "governmental agents responsible

3   for enforcing statutory requirements possess actual knowledge of a statutory violation,"

4   (ii) the agents "fail to take corrective action despite a statutory duty to do so," and

5   (iii) "the plaintiff is within the class the statute intended to protect."  *Ehrhart*, 195 Wn.2d

6   at 402 (citing *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987)).

7              As in the *Hunters Capital* matter, Oma Bap premises its negligence claim solely

8   on the City's alleged failure to enforce Seattle Municipal Code § 15.52 (the "Street Use

9   Ordinance") and certain provisions of the Seattle Fire Code.  *See* Resp. at 22 n.8

10  (explaining that Oma Bap's claim for negligence is "co-extensive" with the plaintiffs'

11  negligence claims in the *Hunters Capital* matter).  In *Hunters Capital*, this Court

12  dismissed the plaintiffs' negligence claims at the summary judgment stage because the

13  plaintiffs (multiple property owners, businesses, and residents in the Capitol Hill

14  neighborhood) could not meet the second or third elements of the failure-to-enforce

15  exception as a matter of law.  2023 WL 184209, at *11–13.  Specifically, the Court found

16  that the Street Use Ordinance and Fire Code did not impose on the City a mandatory duty

17  to take corrective action in the event of a known violation, and that the plaintiffs were not

18  within the class the provisions were intended to protect.  *Id.*

19             Oma Bap's negligence claim fails for the same reasons.  Even assuming the truth

20  of its allegations, Oma Bap has not stated a cognizable negligence claim against the City

21  for the City's alleged failure to enforce the Street Use Ordinance and the Seattle Fire

22  Code.  Significantly, these provisions are intended to promote the health, safety, and

23

1  welfare of the general public and, with respect to these provisions, any duty the City

2  allegedly breached was a duty owed to the general public and not a duty owed

3  specifically to Oma Bap. *See Hunters Capital*, 2023 WL 184209, at *11–13.  Because

4  Oma Bap cannot satisfy all elements of the failure-to-enforce exception, the City's

5  motion is GRANTED as to Oma Bap's third claim for negligence.  Because this defect

6  cannot be cured by alleging additional factual content, the Court concludes that

7  amendment is futile and DISMISSES Oma Bap's negligence claim with prejudice.

8  **5.**     **Fourth Claim:  Nuisance**

9          The City initially moved to dismiss Oma Bap's nuisance claim, arguing that the

10  claim was subsumed by Oma Bap's third claim for negligence.  *See Atherton Condo.*

11  *Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 527, 799 P.2d

12  250 (1990) (explaining that Washington courts do not separately consider negligence

13  claims presented in the garb of nuisance).  Because Oma Bap has since clarified that its

14  nuisance claim is premised on the City's affirmative conduct in support of CHOP, and

15  not on the City's alleged failure to enforce the Street Use Ordinance or Fire Code, the

16  City has withdrawn this portion of its motion.  Reply at 1 (docket no. 20).  The City's

17  motion to dismiss is therefore STRICKEN as moot as it relates to Oma Bap's fourth

18  claim for nuisance.

19  **Conclusion**

20          For the foregoing reasons, the Court ORDERS:

21          (1)     The City's motion to dismiss, docket no. 17, is GRANTED in part and

22  STRICKEN in part as follows:

23

ORDER - 14

1          (a)      The City's motion is GRANTED with respect to Oma Bap's first

2    claim for violation of its substantive due process rights, second claim for taking,

3    and third claim for negligence.  Oma Bap's claims for violation of its substantive

4    due process rights and for taking are DISMISSED without prejudice and with

5    leave to amend.  Oma Bap's claim for negligence is DISMISSED with prejudice

6    because amendment would be futile.

7          (b)      The City's motion is STRICKEN with respect to Oma Bap's fourth

8    claim for nuisance.

9          (2)      Oma Bap may file any amended complaint on or before September 14,

10   2023.   The City shall answer or otherwise respond to any amended complaint by

11   October 5, 2023.  If Oma Bap does not file an amended complaint in this action, the

12   City's answer to Oma Bap's complaint, docket no. 1, is due on or before September 25,

13   2023.

14         (3)      The Clerk is directed to send a copy of this Order to all counsel of record.

15   IT IS SO ORDERED.

16   Dated this 29th day of August, 2023.

17

18   _____

19   Thomas S. Zilly
     United States District Judge

20

21

22

23

ORDER - 15