1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7
8

3PAK LLC d/b/a OMA BAP; HUGO
PROPERTIES LLC; and MOLLY
MOON'S HANDMADE ICE CREAM
LLC,

9
10

                    Plaintiffs,

C23-0540 TSZ

11

        v.

ORDER

12

CITY OF SEATTLE,

13

                    Defendant.

14        THIS MATTER comes before the Court on a motion, docket no. 34, brought by

15 Defendant City of Seattle (the "City") to dismiss Plaintiffs' First Amended Consolidated

16 Complaint.  Having reviewed all papers filed in support of, and in opposition to, the

17 motion, the Court enters the following order.

18 **<u>Background</u>**

19        This case arises from the existence of the Capitol Hill Autonomous Zone, also

20 known as the Capitol Hill Organized Protest ("CHOP").  First Am. Consol. Compl. at ¶ 1

21 (docket no. 33) ("Am. Consol. Compl.").  The Court, the parties, and counsel are all

22 familiar with the origins of CHOP, its effects on the surrounding Capitol Hill

23

ORDER - 1

neighborhood, and the City's response to CHOP.  Because Plaintiff's concede that their

Amended Consolidated Complaint only adds facts to support their substantive due

process claims, the Court will not retread well-worn ground by reciting all relevant

alleged facts.  Instead, the Court incorporates by reference the facts in its previous Order,

*see* docket no. 28 at 1–4, and will only summarize the newly alleged facts.

This case was originally brought solely by Plaintiff 3Pak LLC d/b/a as Oma Bop

("Oma Bop").  Compl. (docket no. 1).  On August 14, 2023, cases brought by Plaintiff

Hugo Properties LLC ("Hugo Properties"), C23-858, and Plaintiff Molly Moon's

Handmade Ice Cream LLC ("Molly Moon"), C23-859, were consolidated into this case

for discovery purposes only.  Minute Order (docket no. 27).  At the time of this limited

consolidation, the Court had pending the City's motion to dismiss Oma Bop's original

complaint in Case No. C23-540.  On August 29, 2023, the Court granted the City's

motion in part and dismissed without prejudice Oma Bop's substantive due process,

negligence, and takings claims.  Order (docket no. 28).  The Court also struck in part the

City's motion as it related to Oma Bop's nuisance claim.  *Id.*  Oma Bop filed an amended

complaint on September 19, 2023.  *See* docket no. 31.  On September 21, 2023, the Court

granted the parties' stipulation to consolidate the three cases for all purposes.  Minute

Order (docket no. 32).  Thereafter, on October 6, 2023, Plaintiffs filed the operative First

Amended Consolidated Complaint, docket no. 33, which is the subject of the City's

renewed motion to dismiss.

Hugo Properties owns the building housing 1111 East Olive Apartments, located

at the corner of 11th Avenue and East Olive Street and directly across the street from the

eastside of Cal Anderson Park.  Am. Consol. Compl. at ¶ 16 (docket no. 33).  Oma Bop

operates on the first floor of the Hugo Properties building.  *Id.* at ¶ 15.  Molly Moon

operates a business at 917 E. Pine Street, near the intersection of 10th Avenue and East

Pine Street, and directly across the street from the southwest corner of Cal Anderson

Park.  *Id.* at ¶ 17.

Plaintiffs' Amended Consolidated Complaint alleges that, in response to CHOP,

the City placed dumpsters and Sani-Cans/portable toilets throughout the Capitol Hill

neighborhood, with the majority being placed at the intersection of 11th and East Olive.

*Id.* at ¶¶ 73, 75–76.  Oma Bop and Hugo Properties allege that, because of the location of

these dumpsters and Sani-Cans, the area around their location became "unsightly,

unsanitary, unsafe, and treacherous to navigate" due to the large amounts of piled up

garbage and human waste.  *Id.* at ¶ 73.  Although the City removed the dumpsters and

most of the Sani-Cans in July 2020, Hugo Properties and Oma Bop allege that the

intersection of 11th and East Olive continued to be used as a dumping ground through the

end of 2020.  *Id.* at ¶ 74.

All Plaintiffs allege that the CHOP participants, with support and supplies from

the City, established a "medical tent" in a parking lot directly across the street from

Molly Moon.  *Id.* at ¶ 119.  The location of this "medical tent" allegedly caused Molly

Moon to be subjected to the constant presence of "volunteer medics" and people

requiring medical care.  *Id.* at ¶ 120.  Plaintiff Molly Moon also alleges it was subjected

to harm because the City provided nighttime lighting to Cal Anderson Park, reinstalled

1    basketball rims in the park, and allowed CHOP participants to get water from a public

2    hose bib. *Id.* at ¶ 121.

3          All Plaintiffs also allege that the City placed various types of barriers around the

4    Capitol Hill neighborhood to control the flow of pedestrians and traffic. *Id.* at ¶¶ 116–18,

5    144a, 144b. The CHOP participants moved the provided barriers to various locations

6    throughout the Capitol Hill neighborhood and also created makeshift barricades using

7    cars and other miscellaneous materials. *Id.* at ¶¶ 68, 115–18. Plaintiffs contend that the

8    locations of the barriers and the presence of the CHOP participants made Plaintiffs'

9    locations inaccessible to customers, vendors, employees, and, in the case of Hugo

10    Properties, tenants. *Id.* at ¶¶ 115–18, 127, 142. Plaintiffs allege that they all experienced

11    decreased revenue due to CHOP and the City's support of the CHOP participants. *Id.* at

12    ¶ 88–89, 125, 159.

13          The City now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss all

14    of Plaintiffs' claims, which allege (i) violation of substantive due process, (ii) a per se

15    taking and a "right of access" taking, (iii) negligence, and (iv) nuisance.

16    **Discussion**

17    **A.**     **Rule 12(b)(6) Standard**

18          Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not

19    provide detailed factual allegations, it must offer "more than labels and conclusions" and

20    contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl.*

21    *Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must indicate more than

22    mere speculation of a right to relief. *Id.* When a complaint fails to adequately state a

23

1    claim, such deficiency should be "exposed at the point of minimum expenditure of time

2    and money by the parties and the court." *Id.* at 558.  A complaint may be lacking for one

3    of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a

4    cognizable legal claim.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th

5    Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the

6    plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  *Usher v.*

7    *City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is

8    whether the facts in the complaint sufficiently state a "plausible" ground for relief.

9    *Twombly*, 550 U.S. at 570.  If the Court considers matters outside the complaint, it must

10   convert the motion into one for summary judgment.  Fed. R. Civ. P. 12(d).  If the Court

11   dismisses the complaint or portions thereof, it must consider whether to grant leave to

12   amend.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

13   **B.    Negligence and Takings Claims**

14        Plaintiffs concede that their alleged facts supporting their negligence and takings

15   claims "have not changed significantly," Resp. at 1 (docket no. 35), since the Court

16   previously dismissed these claims without prejudice and with leave to amend in its prior

17   Order, *see* docket no. 28 at 9–14.  Rather than materially amend their negligence and

18   takings claims to survive a motion to dismiss, "Plaintiffs have revisited these claims and

19   their arguments for the sake of preservation," Resp. at 1 (docket no. 35), and they

20   continue to believe that the Court should deny the motion in its entirety for the reasons

21   stated in their response.  Plaintiffs state that, even if the Court does not do so, it should at

22   a minimum deny the motion to dismiss as to Plaintiffs' claims for nuisance and violation

23

of substantive due process.  *Id.*  Because Oma Bop was given a chance to amend and has

not alleged new facts to support its negligence and takings claims, and because Hugo

Properties and Molly Moon have based their negligence and takings claims on the same

deficient allegations contained in Oma Bop's original complaint, these claims are

DISMISSED with prejudice[1] for the reasons outlined in the Court's prior Order, *see*

docket no. 28 at 9–14.[2]

**C.**     **Substantive Due Process Claims**

      The state-created danger doctrine is an exception to the general principle that the

Due Process Clause does not impose upon the government an affirmative duty to protect

individuals.  *See Martinez v. City of Clovis*, 943 F.3d 1260, 1270–71 (9th Cir. 2019).  To

prevail on their state-created danger claims, Plaintiffs must establish that (i) the City's

affirmative actions created or exposed them to an actual, particularized danger that they

---

[1] Generally, a complaint dismissed pursuant to Rule 12(b)(6) should be dismissed without prejudice and with leave to amend.  *See Lopez*, 203 F.3d at 1130.  If the Court "determines that the pleading could not possibly be cured by the allegation of other facts," then it may dismiss the complaint without leave to amend.  *Id.* (internal citation omitted).  Although the Court is for the first-time dismissing Hugo Properties' and Molly Moon's claims, the Court previously dismissed Oma Bop's substantially identical claims.  *See* Order (docket no. 28).  Additionally, the Court dismissed in part the complaint in *Hunters Capital v. City of Seattle*, which alleged similar claims.  *See* 499 F. Supp. 3d 888 (W.D. Wash. 2020).  *Hunters Capital* involved the same defendant, the same plaintiffs' attorneys, and the same defense counsel as this matter.  Given the commonalities between Oma Bop's, Hugo Properties', and Molly Moon's claims, as well as between this case and *Hunters Capital*, the Court concludes that Hugo Properties and Molly Moon can allege no facts to cure their pleading.

[2] The Court's prior Order addressed only Oma Bop's negligence and takings claims.  Because Plaintiffs concede that they allege no new facts to support their negligence and takings claims and have "revisited these claims and their arguments for the sake of preservation," Resp. at 1 (docket no. 35), the reasoning in the Court's prior Order applies to all Plaintiffs.  And, to the extent Hugo Properties or Molly Moon allege facts beyond Oma Bop's original complaint, they nonetheless fail to allege facts showing they suffered more than temporary or limited access impairments.

1 would not have otherwise faced, (ii) they suffered foreseeable injury, and (iii) the City

2 was deliberately indifferent to the known danger.  *See Sinclair v. City of Seattle*, 61 F.4th

3 674, 680 (9th Cir. 2023) (citing *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133–34

4 (9th Cir. 2018)).

5          Plaintiffs' alleged facts fail to establish that they were subjected to an actual,

6 particularized danger.  Although the Amended Consolidated Complaint provides greater

7 detail than Oma Bop's original complaint concerning how Plaintiffs were allegedly

8 subjected to a state created danger, the Amended Consolidated Complaint suffers from

9 the same foundational defects as Oma Bop's original complaint.  Plaintiffs fail to allege

10 that they were subjected to a particularized danger.  Rather, the Amended Consolidated

11 Complaint merely develops how the broader Capitol Hill community was subjected to

12 potential harms by the City's actions to support CHOP.

13          Plaintiffs argue that, under *Polanco v. Diaz*, 76 F.4th 918 (9th Cir. 2023), they can

14 allege particularized harm by alleging that they were part of a discrete group that was

15 subjected to an actual danger.  *Polanco* is not helpful to Plaintiffs.  Although the *Polanco*

16 court stated that "a danger can be 'particularized' even if it is directed toward a group

17 rather than an individual," *id.* at 927 (citing *Hernandez*, 897 F.3d at 1133), *Polanco* is

18 distinguishable.  In *Polanco*, the estate of a deceased prison guard brought suit alleging

19 that the state of California subjected the decedent to a state-created danger by transferring

20 numerous prisoners from a prison with a severe COVID-19 outbreak to a prison that had

21 no recorded COVID-19 cases, causing a COVID-19 epidemic in the latter prison.  *Id.* at

22 923–25.  The *Polanco* court started its analysis by framing the plaintiff's claim in the

23

context of the employer-employee relationship.  *See id.* at 926 ("In the context of public

employment, although state employers have no constitutional duty to provide their

employees with a safe working environment, the state-created-danger doctrine holds

them liable when they affirmatively, and with deliberate indifference, create or expose

their employees to a dangerous working environment.").  Unlike in *Polanco*, here, no

special relationship existed between the City and Plaintiffs; Plaintiffs were merely

members of the general Capitol Hill community.

Beyond the lack of any special relationship between Plaintiffs and the City, the

scope of the relevant groups further distinguishes *Polanco* from this case.  In *Polanco*,

the relevant group was prison guards and inmates at San Quentin State Prison

immediately following the inmate transfer.  *See id.* at 927.  The group's scope could be

easily determined by referencing payroll and other operational records.  By Plaintiffs'

own admission, CHOP extended to "sixteen city blocks in all."  Am. Consol. Compl. at

¶ 25 (docket no. 33).  The City placed dumpsters, Sani-Cans, and other resources near

Plaintiffs' locations and at multiple other locations throughout the Capitol Hill

neighborhood, *see id.* at ¶ 75, exposing significant portions of the Capitol Hill

neighborhood to the same harms as Plaintiffs.  A sixteen-block area containing dozens of

businesses and thousands of residents is not the type of "discrete and identifiable group"

required to allege a state-created danger claim.  *Cf. Polanco*, 76 F.4th at 927.  Given that,

despite having had an opportunity to amend, Plaintiffs have failed to allege viable state-

created danger claims, the Court concludes that Plaintiffs cannot cure the deficiencies of

their operative pleading by proffering facts sufficient to plausibly allege a state-created

1   danger claim.  *See generally* Order at 5–9 (docket no. 28); *Hunters Capital v. City of*

2   *Seattle*, 650 F. Supp. 3d 1187, 1199–1202 (W.D. Wash 2023).  Accordingly, Plaintiffs'

3   substantive due process claims are DISMISSED with prejudice.

4   **D.   <u>Nuisance Claims</u>**

5        The City contends that Plaintiffs' nuisance claims are barred by a two-year statute

6   of limitations.  Plaintiffs acknowledge that any nuisance from CHOP was resolved, at the

7   latest, in December 2020.  Am. Consol. Compl. at ¶¶ 12, 149a, 149b, 163 (docket no. 33).

8   Plaintiff Oma Bop brought suit in April 2023, and Plaintiffs Hugo Properties and Molly

9   Moon brought suit in June 2023.  Thus, Plaintiffs filed their nuisance claims more than

10  two years after the claims arose.  Plaintiffs argue, however, that their nuisance claims

11  were timely asserted because (i) the limitations period is three years, and (ii) even if it

12  was two years, it was tolled.  The Court concludes that the nuisance claims are subject to

13  a two-year deadline to file suit, but declines to address the tolling issue for the reasons

14  explained below.

15       According to Plaintiffs, "RCW 4.16.080(1) provides that all claims 'for waste or

16  trespass upon real property' – which is what Plaintiffs' nuisance claim alleges – are

17  subject to a three-year statute of limitations."  Resp. at 20 (docket no. 35).  RCW

18  4.16.080(1) creates a three-year statute of limitations for "action[s] for waste or trespass

19  upon real property," but it does not mention nuisance.  Plaintiffs also rely on *Bradley v.*

20  *American Smelting & Refining Co.*, 104 Wn.2d 677, 709 P.2d 782 (1985), to support their

21  three-year statute of limitations contention.  *Bradley* involved the question of whether the

22  plaintiff could pursue relief under either a theory of trespass, a theory of nuisance, or both

23

1    for damage caused by particles discharged from a nearby copper smelter that settled on

2    his land.  *See id.* at 684–91.  The *Bradley* court concluded that "the remedies of trespass

3    and nuisance are not necessarily mutually exclusive."  *Id.* at 690–91.  Despite *Bradley*'s

4    detailed comparison of nuisance and trespass claims, the case does not a support a three-

5    year statute of limitations for nuisance claims in Washington.  *See id.* at 692–93.

6          In contrast to RCW 4.16.080 and *Bradley*, the catch-all statute, RCW 4.16.130,

7    and *Wallace v. Lewis County*, 134 Wn. App. 1, 137 P.3d 101 (2006), make clear that, in

8    Washington, "Plaintiffs have two years from the time a nuisance action accrues to file a

9    lawsuit."  *Id.* at 19 (citing RCW 4.16.130 ("An action for relief not hereinbefore provided

10   for, shall be commenced within two years after the cause of action shall have accrued."));

11   *see Mayer v. City of Seattle*, 102 Wn. App. 66, 75–76, 10 P.3d 408 (2000); *see also* 16

12   Wash. Prac., Tort Law and Practice § 10:13 (5th ed.).   Thus, absent a basis for tolling the

13   limitations period, Plaintiffs' nuisance claims will be time-barred.

14         Plaintiffs argue that the statute of limitations should be tolled pursuant to

15   *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).  Under *American Pipe*,

16   "[in] some instances, a plaintiff can rely on the filing of a prior class action to vindicate

17   the right in question and toll the statute in the event that the class is not ultimately

18   certified."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008)

19   (citing *Am. Pipe*, 414 U.S. at 554).  When determining whether to apply *American Pipe*

20   tolling, the Court may not "import the doctrine into state law where it did not previously

21   exist."  *See id.*  In *Campeau v. Yakima HMA LLC*, 26 Wn. App. 2d 481, 528 P.3d 855

22   (2023), the Washington Court of Appeals explicitly rejected *American Pipe* tolling in

23

1  Washington.  *See id.* at 488–89.  The Washington Supreme Court, however, granted

2  review of the decision, *see* 1 Wn.3d 1024, 534 P.3d 804 (2023), and heard oral argument

3  on January 11, 2024.  The Court therefore DEFERS ruling on this portion of the City's

4  motion pending the Washington Supreme Court's resolution of *Campeau.*

5  **Conclusion**

6        For the foregoing reasons, the Court ORDERS:

7        (1)    The City's motion, docket no. 34, to dismiss Plaintiffs' First Amended

8  Consolidated Complaint is GRANTED in part and DEFERRED in part as follows:

9           (a)    Plaintiffs' substantive due process, taking, and negligence claims,

10  Am. Consol. Compl. at ¶¶ 157–80 (docket no. 35), are DISMISSED with prejudice.

11           (b)    The City's motion is DEFERRED as it relates to Plaintiffs' nuisance

12  claim and the application of *American Pipe* tolling in Washington.

13        (2)    The Court STAYS this case pending the Washington Supreme Court's

14  ruling in *Campeau v. Yakima HMA LLC*, No. 102047-3.  The parties are ORDERED to

15  file a joint status report within fourteen (14) days after the Washington Supreme Court

16  issues a decision in *Campeau.*

17        (3)    The Clerk is directed to send a copy of this Order to all counsel of record.

18        IT IS SO ORDERED.

19        Dated this 17th day of January, 2024.

20

21                              Thomas S. Zilly

22                              United States District Judge

23

ORDER - 11