UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

3PAK LLC d/b/a OMA BAP; HUGO PROPERTIES LLC; and MOLLY MOON'S HANDMADE ICE CREAM LLC,

              Plaintiffs,

   v.

CITY OF SEATTLE,

             Defendant.

C23-0540 TSZ

ORDER

THIS MATTER comes before the Court on the deferred portion of the motion to dismiss, docket no. 34, brought by the City of Seattle ("the City"). Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

This case arises from the existence of the Capitol Hill Autonomous Zone, also known as the Capitol Hill Organized Protest ("CHOP"). First Am. Consol. Compl. at ¶ 1 (docket no. 33). The Court, the parties, and counsel are all familiar with the origins of CHOP, its effects on the surrounding Capitol Hill neighborhood, and the City's response to CHOP. In Hunters Capital, LLC v. City of Seattle, the plaintiffs brought a class action lawsuit against the City that made claims similar to those in the present action. No. 20-cv-0983-TSZ (W.D. Wash.) ("Hunters Capital"). Compare the present First Am. Consol.

ORDER - 1

1  Compl. at pp. 52-56 (docket no. 33) with Hunters Capital's Third Amended Class Action

2  Complaint at pp. 62-68 (20-0983: docket no. 47).  The attorneys who represented the

3  Hunters Capital plaintiffs are the same as those who represent Plaintiffs here.  The

4  Hunters Capital plaintiffs commenced their action on June 24, 2020 (20-0983: Complaint

5  at p. 1, docket no. 1), the Court denied class certification on May 9, 2022 (20-0983:

6  Order at p. 37, docket no. 96), and the Court dismissed the case on February 16, 2023,

7  with prejudice after the parties settled (20-0983: docket nos. 181-82).  The Court will not

8  retread well-worn ground by reciting all relevant underlying alleged facts from Hunters

9  Capital and in this case.  Instead, the Court incorporates by reference the facts in its

10 previous orders here.  See docket no. 28 at pp. 1-4 and docket no. 41 at pp. 1-4.

11     In the present case, the City moved under Federal Rule of Civil Procedure 12(b)(6)

12 to dismiss all of Plaintiffs' claims, docket no. 34, which allege (i) violation of substantive

13 due process, (ii) a per se taking and a "right of access" taking, (iii) negligence, and (iv)

14 nuisance.  Motion to Dismiss at pp. 52-56 (docket no. 33).  The Court previously granted

15 in part and deferred in part the City's motion; all claims other than nuisance were

16 dismissed with prejudice.  Order at p. 11 (docket no. 41).  The Court ruled that a two-year

17 statute of limitations applied to Plaintiffs' nuisance claim.  Id. at p. 10.  Plaintiffs have

18 acknowledged that any CHOP nuisance was resolved by December 2020.  First Am.

19 Consol. Compl. at ¶¶ 12, 40 (docket no. 33).[1]  Plaintiffs filed this lawsuit on April 6,

---

[1] The Court notes that it is far more likely that Plaintiffs' had knowledge of their nuisance claim on or shortly after the original Hunters Capital complaint was filed in July 2020 given the publicity of the CHOP litigation.

ORDER - 2

2023. Complaint at p. 1 (docket no. 1). More than two years have elapsed after the claim arose. Thus, the remaining question presented is whether the statute of limitations tolled under American Pipe & Construction Company v. Utah, 414 U.S. 538 (1974) or Washington's equitable tolling doctrine.[2]

The Court previously stayed this case to await the Washington Supreme Court's decision in Campeau v. Yakima HMA, LLC, 3 Wn.3d 339, 551 P.3d 1037 (Wash. 2024). Order at p. 11 (docket no. 41). After the Washington Supreme Court filed its opinion, the Court directed the parties to file supplemental briefing on the effect Campeau has on Plaintiffs' nuisance claim. Minute Order (docket no. 48). The parties did so, docket nos. 49-52, and the Court now addresses Plaintiffs' nuisance claim and whether equitable tolling applies under either federal or state law.

**Discussion**

**A.   Rule 12(b)(6) Standard**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and

---

[2] The parties disagree as to whether "cross-jurisdictional" tolling applies to Plaintiffs' nuisance claim. A "cross-jurisdictional action" occurs where a plaintiff seeks to use a class action filed in one jurisdiction to toll an action later filed in another jurisdiction. Hatfield v. Halifax PLC, 564 F.3d 1177, 1187 (9th Cir. 2009). Whether this doctrine applies to state law claims depends on whether the state has allowed such cross-jurisdictional tolling. Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025 (9th Cir. 2008) (noting that "several federal courts have declined to import the doctrine into state law where it did not previously exist"). The Washington Supreme Court has not adopted cross-jurisdictional tolling. See Martin v. Washington State Dep't of Corr., No. C20-00311-LK, 2023 WL 3902363, at *6 (W.D. Wash. May 1, 2023); Mix v. Ocwen Loan Servicing, LLC, No. C17-0699JLR, 2017 WL 5549795, at *5 (W.D. Wash. Nov. 17, 2017). Even if it had, because both Hunters Capital and this case were filed in the same court, this doctrine would not apply.

ORDER - 3

contain more than a "formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must indicate more than mere speculation of a right to relief. Id. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558. A complaint may be dismissed as a matter of law for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

**B.    Nuisance Claim**

    **1.    American Pipe Tolling**

In American Pipe, the plaintiff filed a lawsuit in federal court for damages under the Sherman Act, 15 U.S.C. § 1, and moved for class certification. 414 U.S. at 541. The trial court denied class certification and would-be class members subsequently moved to intervene in the plaintiff's lawsuit. Id. at 542-44. The trial court denied the motion, concluding that the statutes of limitation on the individual causes of action had run. Id. at 544. The Supreme Court reversed, holding that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Id. at 554. The members of the class stood as parties to the plaintiff's lawsuit and the timely filing of that action "satisfied the purpose of the limitation provision as to all those who

ORDER - 4

might subsequently participate in the suit as well as for the named plaintiffs." Id. at 551. Would-be class members were permitted to make timely motions to intervene even after the statute of limitation would otherwise have run on the individual claims. Id. at 552-53.

American Pipe tolling begins when a class action complaint is filed and ends when class certification is denied. DeFries v. Union Pac. R.R. Co., 104 F.4th 1091, 1095-96 (9th Cir. 2024). " 'At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action.' " Id. at 1096-97 (quoting Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 353-54 (1983)).

American Pipe permits tolling within the federal court system in federal question class actions. Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025 (9th Cir. 2008). The American Pipe tolling rule is not binding on state law claims, which are governed by state law statutes of limitation and state law tolling principles. See id.; Wade v. Danek Med., Inc., 182 F.3d 281, 284, 289-90 (4th Cir. 1999). Whether a state statute of limitations would be tolled by a federal class action is a question of state law. See Chardon v. Fumero Soto, 462 U.S. 650, 661 (1983). " 'When interpreting state law, [this Court is] bound to follow the decisions of the state's highest court, and when the state supreme court has not spoken on an issue, [this Court] must determine what result the [state supreme] court would reach based on state appellate court opinions, statutes and treatises.' " Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 15 F.4th 885, 889 (9th Cir. 2021) (quoting Diaz v. Kubler Corp., 785 F.3d 1326, 1329 (9th Cir. 2015)). This Court " 'will ordinarily accept the decision of an intermediate appellate court as the controlling interpretation of state law,' unless this Court finds " 'convincing evidence that the state's

ORDER - 5

1  supreme court likely would not follow it.' " Id. (quoting Tomlin v. Boeing Co., 650 F.2d

2  1065, 1069 n.7 (9th Cir. 1981) and Ryman v. Sears, Roebuck & Co., 505 F.3d 993, 994

3  (9th Cir. 2007)).

4  In Campeau, the Washington Supreme Court declined to determine whether

5  American Pipe tolling is available in Washington. 3 Wn.3d at 345. Campeau involved a

6  failed representational action brought under a theory of associational standing and a

7  follow-on class action rather than a failed class action and a follow-on motion to

8  intervene, as was the case in American Pipe. Id. The Campeau court concluded

9  American Pipe did not apply to the facts of the case before it and "will await a case that

10 more squarely confronts that question." Id. As further discussed below, the Campeau

11 court found Washington's equitable tolling doctrine applied to Campeau's claims and

12 reversed the Court of Appeals. Id. at 348-49.

13 In the present case, the Court must decide whether the Washington Supreme Court

14 would apply the doctrine of American Pipe to toll Plaintiffs' nuisance claim. See Centaur

15 Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp., 878 F. Supp. 2d

16 1009, 1015 (C.D. Cal. 2011). By declining to determine whether American Pipe tolling

17 is available in Washington, the Washington Supreme Court did not overrule the Court of

18 Appeals' holding that American Pipe tolling is not available in Washington. See

19 Campeau v. Yakima HMA LLC, 26 Wn. App. 2d 481, 489, 528 P.3d 855 (2023),

20 reversed on other grounds by 551 P.3d 1037 (Wash. 2024). The Court of Appeals'

21 holding constitutes an acceptable decision of an intermediate appellate court as the

22 controlling interpretation of state law. Mudpie, Inc., 15 F.4th at 889. Plaintiffs argue the

23

ORDER - 6

1   Washington Supreme Court would likely not follow this decision because it rejected the

2   reasoning underlying the Court of Appeals' holding on the availability of American Pipe

3   tolling in Washington.  See Campeau, 3 Wn.3d at 346-47; Campeau, 26 Wn. App. 2d at

4   489.  While a collateral effect of Campeau is that the reasoning of the Court of Appeals'

5   holding was undermined, it does not change the fact that the Washington Supreme Court

6   still declined to outright reverse that holding but instead agreed with the Court of Appeals

7   that American Pipe did not apply to the facts of the case.  See Campeau, 26 Wn. App. 2d

8   at 490-91.  Accordingly, there exists no convincing evidence that the Washington

9   Supreme Court would likely not follow the Court of Appeals' holding that American Pipe

10  tolling is not available in Washington.  The Court concludes that American Pipe does not

11  toll the statute of limitations of Plaintiffs' nuisance claim.[3]

12         **2.    Equitable Tolling Doctrine**

13         Plaintiffs also rely on Washington's equitable tolling doctrine to toll the applicable

14  statute of limitations.  Equitable tolling has long been a part of Washington substantive

15  law.  See Ames v. Dep't of Lab. & Indus., 176 Wash. 509, 513-14, 30 P.2d 239 (1934).

---

[3] There remains little reason to believe the Washington Supreme Court would adopt the American Pipe tolling.  Equitable tolling has existed in Washington since at least Ames v. Dep't of Lab. & Indus., 176 Wash. 509, 30 P.2d 239 (1934), and equitable principles have been recognized in Washington as early as 1893.  Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wn.2d 738, 749, 863 P.2d 535 (1993) (citing Spokane St. Ry. v. City of Spokane Falls, 6 Wash. 521, 33 P. 1072 (1893)).  Federal tolling doctrines, such as American Pipe, are more likely to supplement rather than outright substitute Washington's existing equitable tolling doctrine.  The Washington Supreme Court recently did so.  See Matter of Fowler, 197 Wn.2d 46, 53-54, 479 P.3d 1164 (2021) (adopting the federal equitable tolling standard for habeas petitions to supplement their own where the Washington Supreme Court had not considered whether the petitioner's own attorney's misconduct can give rise to equitable tolling).  With such a robust existing body of caselaw, this Court concludes that the Washington Supreme Court would not adopt American Pipe tolling in light of Washington's own equitable tolling jurisprudence.

Washington law permits equitable tolling of a statute of limitations in a civil suit when (1) the plaintiff has exercised diligence, (2) the defendant's bad faith, false assurances, or deception has interfered with the plaintiff's diligent efforts, (3) tolling is consistent with (a) the purpose of the underlying statute and (b) the purpose of the statute of limitations, and (4) justice requires tolling the statute of limitations.  Fowler v. Guerin, 200 Wn.2d 110, 125, 515 P.3d 502 (2022).  This standard appropriately balances a plaintiff's interest in seeking justice against the individual and societal interest in finality and the protections of defendants against unfair surprise and stale claims.  Fowler, 200 Wn.2d at 125.  Washington courts evaluate each part of this standard in light of the particular facts of each case and equitably toll the applicable statute of limitations only when all four parts are satisfied.  Id. at 124-25.  Equitable tolling is an extraordinary form of relief because statutes of limitation generally reflect the public policy of the state as enacted by the legislature.  Id. at 118.  In the context of statutes of limitations, any lesser standard "would substitute for a positive rule established by the legislature a variable rule of decision based upon individual ideas of justice conceived . . . by the courts."  Id. at 119 (quoting Leschner v. Dep't of Lab. & Indus., 27 Wn.2d 911, 926, 185 P.2d 113 (1947)).  Washington courts have repeatedly cautioned that the doctrine should be invoked "sparingly," is a "very narrow equitable power in the courts," and is "rarely exercised."  See Matter of Fowler, 197 Wn.2d 46, 53, 479 P.3d 1164 (2021); Kingery v. Dep't of Lab. & Indus. of the State of Wash., 132 Wn.2d 162, 173, 937 P.2d 565 (1997); Gudenau v. Dep't of Lab. & Indus., No. 58661-1-I, 2007 WL 2985068, at *4-5 (Wash. Ct. App. Oct. 15, 2007).

As noted above, Campeau concerned a representational action and a follow-on class action. In the first action, Wash. State Nurses Ass'n v. Yakima HMA, LLC, a nursing association filed a lawsuit against the defendant on behalf of several home health and hospice nurses seeking damages under Washington's Minimum Wage Act, RCW Chapter 49.46, and Industrial Welfare Act, RCW Chapter 49.12, for unpaid working hours, overtime, and missed meal periods. 196 Wn.2d 409, 412, 469 P.3d 300 (2020) ("WSNA"). The defendant sought summary dismissal on the grounds that the association lacked standing to bring its claim, which the trial court denied. Id. at 413. Following a bench trial, the court found that the defendant failed to pay nearly $1.5 million in nurses' wages and that the defendant knowingly and willfully deprived the nurses of their pay. Id. at 413-14. The Washington Supreme Court reversed, concluding the nursing association did not have associational standing to recover unpaid wages on behalf of its nurses and noting "the nurses could pursue a class action claim" against the defendant. Id. at 425-26. Campeau, a union member, nurse, and former employee of the defendant, filed a class action lawsuit alleging materially identical wage and hour violation claims to those in WSNA "to vindicate the rights of the nurses who prevailed at trial . . . but who still have not been paid the wages they are due." 3 Wn.3d at 343. By this point, the statute of limitations had run. Id. at 341-42. While Campeau could not satisfy all Fowler factors, the Campeau court nevertheless held the equitable tolling doctrine applied under the specific facts of that case. Id. at 348. The court noted Fowler "is necessarily limited to the issues before it" and "did not consider cases like American Pipe or the applicability

ORDER - 9

of equitable tolling where associational standing fails and an association's member files a follow-on class action." Id. at 347.

The Campeau court announced the following narrow exception to the application of the Fowler factors in equitable tolling cases: "We conclude that equitable tolling may be appropriate, even in the absence of bad faith, *where associational standing fails*, *an association's member files a follow-on class action*, and all of the other elements of equitable tolling have been met." Id. at 348 (emphasis added). The Campeau court highlighted a purpose underlying Washington's Minimum Wage Act and Industrial Welfare Act: "to ensure employees are paid the adequate wages they labored for." Id. at 348. Applying equitable tolling in Campeau was consistent with the legislative purposes behind Washington's labor laws. Id. at 347. The Campeau court stated that failing to extend equitable tolling "in these circumstances" would have undermined the value of associational standing and disincentivized members from relying on their unions and employee associations. Id. at 347-48. Prior to the court's holding in WSNA, the nursing association not only recovered the nurses' wages but secured double damages, attorney fees, and court costs for its members. Id. at 347. Without equitable tolling, "these nurses would be unable to recover the wages to which they are entitled and [the defendant] would receive an unjustified windfall in stolen wages." Id. at 348.

In this case, Plaintiffs cannot satisfy all four Fowler factors and Campeau is distinguishable. First, no evidence in the record exists that would support a conclusion that the City engaged in bad faith, false assurances, or deception to interfere with Plaintiffs' timely filing of their nuisance claim. Campeau's exception to this requirement

ORDER - 10

is inapplicable because this case does not concern associational standing or a follow-on class action lawsuit filed by an association member.

Second, Plaintiffs do not show that tolling is consistent with the purpose of the underlying statute, which is a requirement under both Fowler and Campeau.  Plaintiffs brought their statutory nuisance claim under "RCW 7.48.010, et. seq." First Am. Consol. Compl. at p. 56 (docket no. 33).  Nuisance consists in unlawfully doing an act or omitting to perform a duty that either annoys, injures, or endangers the comfort, health, or safety of others, or unlawfully interferes with, obstructs, or render dangerous for passage any public park, street, or highway.  RCW 7.48.120.  In other words, "nuisance is a substantial and unreasonable interference with the use and enjoyment of land." Grundy v. Thurston County, 155 Wn.2d 1, 6, 117 P.3d 1089 (2005) (internal quotation marks omitted) (quoting Bodin v. City of Stanwood, 79 Wn. App. 313, 318 n.2, 901 P.2d 1065 (1995)).  But unlike the wage and labor laws analyzed in Campeau, RCW Chapter 7.48 does not identify any legislative purpose to the enactment of the nuisance statutes, and Plaintiffs do not offer one.[4]  Without a clear purpose of the underlying statute, the Court cannot conclude that Plaintiffs have satisfied this factor.

Third, justice does not require that the statute of limitations be tolled in this case.  Any reasonable concerns of an unjust windfall are nonexistent.  The nursing association

---

[4] In Ames, the court allowed an injured worker to pursue appeals despite missing the notice of appeal deadline based on equitable principles that, while not contained in the applicable statutes, "the Legislature must have had in mind that equity would relieve in all proper cases from the hardships which otherwise would occur in enforcing the strict letter of the statute." 176 Wash. at 514.  Any basis to apply similar equitable principles to the nuisance statutes is absent here.

in WSNA had already secured damages in the amount of nearly $1.5 million, statutory double damages, and attorney fees and costs against the defendant following a bench trial.  And the WSNA court explicitly identified a class action lawsuit as being an appropriate vehicle for relief, and the Campeau plaintiffs subsequently filed such a lawsuit to collect the damages owed.  In contrast, the City's liability on Plaintiffs' nuisance claim has never been fully litigated, Hunters Capital settled before any adjudication on the merits of those plaintiffs' claims, and holding Plaintiffs' nuisance claim in the present case as time-barred would not, as Plaintiffs contend, give the City an unjust windfall.  Furthermore, Plaintiffs shared the same counsel as the plaintiffs in Hunters Capital, who were aware of the facts underlying both lawsuits and the timing of the Court's denial of class certification, and Plaintiffs here still did not file this lawsuit until nearly a year later.[5]  Also in Hunters Capital, the plaintiffs' counsel requested search terms for discovery communications with all City witnesses, including "Oma Bop," and "Molly Moon's," two of the three named plaintiffs in this case.  Decl. of Gabriel Reilly-Bates, Ex. 6 at pp. 4-5 (20-0983: docket no. 123-6).  The Washington Supreme Court noted the following maxim: "Equity aids the vigilant, not those who slumber on their rights."  Leschner, 27 Wn.2d at 927.  The Court finds this maxim applicable here.

---

[5] In a declaration dated January 13, 2022 (long before the statute of limitation expired in this case), counsel for Plaintiffs stated, "Since we filed this case in late June 2020, our firm has received dozens of inquiries from members of the proposed Class who are interested in pursuing their own lawsuits against the City.  Many of these Class members periodically check in with us to ask if they should file their own case, but I believe most or all of them are presently waiting to see what the outcome of our motion to certify before they make a final decision about whether to file their own lawsuit." Decl. of Tyler Weaver at p. 3 (20-0983: docket no. 66).  Despite these representations of the proposed class members' diligence, Plaintiffs in this case did not file their nuisance claim until long after the statute of limitations had run.

Plaintiffs fail to demonstrate that justice entitles them to receive extraordinary relief under Washington's equitable tolling doctrine. Plaintiffs' nuisance claim is therefore time-barred.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The deferred portion of the City's motion to dismiss, docket no. 34, is GRANTED. Plaintiffs' nuisance claim is hereby DISMISSED with prejudice.

(2) The Clerk is directed to enter judgment consistent with this Order, to send a copy of this Order and the Judgment to all counsel of record, and to CLOSE this case.

IT IS SO ORDERED.

Dated this 25th day of October, 2024.

Thomas S. Zilly
United States District Judge

ORDER - 13